Harold Baer, J.
This matter was set down for trial to determine whether or not a written agreement providing for arbitration exists between the parties. It was tried upon a stipulated and agreed set of facts. The petitioner, Lewis Camhi (hereinafter referred to as “ Camhi”) was, between the years 1950 *94 and 1959, a member of a partnership known as Dorothy Undergarment Co. (hereinafter referred' to as the “Company”). Prior to and during the time that Camhi was a partner in the Company, the latter was a member of the Allied Underwear Association, Inc. (hereinafter referred to as the “Association”). The Association was party to a collective bargaining agreement (hereinafter referred to as the “ Agreement ”) with the Underwear and Negligee Workers Union, Local 62, ILGWU (hereinafter referred to as the “Union”). The last Agreement between the Association and Union, here applicable, went into effect on Julv 1, 1956, and terminated June 30, 1960.
The agreement included a very broad arbitration clause (§ 44-a) as the exclusive means of determining all controversies (§ 45). The Agreement further provided: “All members of the Association at the time of the execution of this agreement and persons, firms and corporations becoming members thereof subsequent to the execution of this agreement, shall be and continue to remain personally and individually liable under this agreement during the term thereof, irrespective of whether said member shall cease to be a member of this Association prior to the date set for the expiration of said contract, and his liability shall be deemed to have survived the termination of such membership and remain in full force and effect during the full term thereof, with the same force and effect as if this agreement has been signed individually by each member of the Association ” (§ 28).
It is conceded that there is no writing signed by Camhi with either the Association or the Union. However, Camhi’s brother and partner, Joseph, did sign an agreement with the Association whereby the Company became a member of the Association.
In March, 1959 Camhi left the Company. In February, 1960 the Union served Camhi with a notice of arbitration pursuant to the Agreement, contending that Camhi was operating a nonunion shop in violation of the Agreement between the Union and the Association.
Camhi resists arbitration on the theory that there is no privity of contract between the Union and himself, and consequently there is no written agreement to arbitrate.
Generally, ‘1 A partner is personally and individually liable for the entire obligations of the partnership, It does not matter that- these liabilities .may "arise out of torts or from contracts # * *. This individual liability • * * * arises out of the application of the aggregate theory tb' the partnership ” *95 (1 Barrett and Seago, Partners and Partnerships, § 8.2, pp. 237-238). During the continuance of a partnership, ■“ each member has a right to bind his copartners to the performance of every contract he may make in the name of the partnership.” (40 Am. Jur., Partnership, § 152, p. 237.)
‘ ‘ The acts performed in the name of a partnership cannot ordinarily be considered apart from the persons composing it. * * * [the partnership] has no independent existence ” (Matter of Peck, 206 N. Y. 55, 60).
Partners are jointly liable with respect to their contractual obligations and under proper proceedings, an obligation of the partnership may be satisfied out of the individual or separate property of one of the partners (Caplan v. Caplan, 268 N. Y. 445, 448 ; Partnership Law, § 26). Moreover, the withdrawal of a partner from the partnership does not relieve him of any of the obligations assumed by the partnership during the time he was a member thereof. Such a partner, as was Camhi, had the unlimited liability of a general partner for the performance of all of the obligations of the partnership incurred during the time he was a member (see Detrio v. United States of America, 264 F. 2d 658, 661 ; Partnership Law, §§ 26, 67).
While creditors, or others, to whom a partnership owes obligations, must look first to the joint or partnership property to satisfy their claims before they may attach the separate and individual property of the partners (Matter of Peck, supra); nevertheless, the individual liability of the partners dates to the time when the obligation is incurred and arises simultaneously with the joint liability (People v. Knapp, 206 N. Y. 373, 382 ; Jones v. Blun, 145 N. Y. 333).
This is not the situation, as contended by Camhi, where a third party seeking to enforce an agreement with a partnership, proceeds against an individual partner without first proceeding against the partnership (Baron v. Lakow, 121 App. Div. 544 ; Kirschbaum v. Merchants Bank of New York, 272 App. Div. 336). Here the Union seeks to enforce arbitration against the defaulting party pursuant to the terms', of the Agreement.
The Union claims that Camhi violated the Agreement and seeks arbitration on this issue. It is for the arbitrator to decide if there was any violation, and .whether or not this petitioner can be held ■“ personally and individually ”.
The fact that only Camhi’s partner signed the Agreement with the Association,- does not preclude Camhi-from being bound to arbitrate. (See Matter of Stein-Tex, Inc. [Scappatillio], 193 Misc. 402 ; Matter of Baker [Board of Educ.], 309 N. Y. 551.)
*96 The parties stipulated (p. 5) that at all times during the existence of the partnership the Company complied with the successive agreements between the Association and the Union. Camhi’s participation in the Company’s business during a major portion of the life of the Agreement; meeting the obligation of the Agreement as well as reaping its benefits, also makes bim party to the Agreement by ratification.
Again it should be noted that the Agreement provides that members of the Association continue to be bound “ personally and individually ’ ’ during the life of the Agreement with the same force and effect as if signed individually by each of them and irrespective of whether they cease to be a member of the Association before the expiration of the Agreement (§ 28).
This court need not interpret this clause with relation to the main issue between the parties, but taking it in conjunction with the circumstances surrounding the relationship of the parties over many years, there can be no other conclusion but that Camhi did agree, through the Association that all controversies or claims, “ arising under, out of or in connection with, or in any manner relating to this agreement, * * * shall be
submitted to arbitration”. (§ 44-a). This language must have been understood by Camhi to mean that all acts of the parties subsequent to the making of the contract which raise issues of fact or law, lie exclusively within the jurisdiction of the arbitrator (Matter of Lipman [Haeuser Shellac Co.], 289 N. Y. 76, 80). The questions raised by the notice to arbitrate served upon Camhi as well as the interpretation of section 28 of the Agreement insofar as it affects Camhi’s continuing liability, should be left for the arbitrator (see Matter of Teschner [Livingston], 285 App. Div. 435).
Accordingly, I find as a question of fact and as a matter of law that there existed between the parties a written agreement providing for arbitration of controversies and claims arising out of the collective bargaining agreement.