James WISNOUSE, Plaintiff,

v.

Steven TELSEY et al., Defendants.

No. 73 Civil 1256.

United States District Court,
S. D. New York.

Nov. 8, 1973.

Lipper, Keeley, Lowey & Dannenberg, New York City, for plaintiff; Stephen Lowey, New York City, of counsel.

Kuh, Goldman, Cooperman & Levitt, New York City, for defendant Axelrod & Co.; Robert E. Goldman, New York City, of counsel.

Rogers & Wells, New York City, for defendant Steven Telsey; Norman Ostrow, William J. O'Brien, II, New York City, of counsel.

Moss, Wells & Marcus, New York City, for defendant Ronald Rothstein; Richard H. Wels, New York City, of counsel.

Kimmelman, Sexter & Sobel, Arthur H. Sobel, New York City, for defendant Chris Christopher.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant New York Stock Exchange, Inc.

Cahill, Gordon & Reindel, New York City, for defendant Seidman & Seidman.

Butowsky, Schwenke & Devine, New York City, for defendants Levine, Kaplan and Campione; Michael C. Devine, New York City, of counsel.

Irwin Axelrod, pro se.

Vincent Coleman, pro se.

Henry Warner, pro se.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, a customer of the defendant Axelrod & Co. (Axelrod), a limited partnership, a broker-dealer and a member of the New York Stock Exchange, on May 17, 1971 entered into a subordination agreement with respect to securities then in his account with Axelrod, having a market value of $150,601. He subordinated his right thereto "to the claims of all other present and future creditors of [Axelrod] arising out of any matters occurring prior to" May 17, 1973 (hereafter referred to as the maturity date). On June 12, 1971 plaintiff forwarded an additional $25,000 in tax-exempt municipal bonds to defendant Steven Telsey, a general partner in Axelrod, which plaintiff alleges were also placed in his subordinated account contrary to his express instructions.

On or about September 5, 1971 Axelrod, involved in financial difficulties and then under investigation by the New York Stock Exchange, undertook self-liq-

uidation and engaged a liquidator for that purpose, with the consent of a committee of creditors. The liquidator sold the Axelrod assets, including plaintiff's subordinated securities upon which were realized $157,857.95.

On March 27, 1973 plaintiff commenced this action against Axelrod, its partners, its accountants and the New York Stock Exchange, alleging various violations of the Securities Acts of 1933 and 1934 and also common law claims. He now moves for summary judgment against Axelrod and its partners for the $157,857.95 realized upon the sale of his securities, based upon the eighth count of the complaint, a common law claim for breach of the subordination agreement. Axelrod, its liquidator and its partners oppose the motion upon various grounds. In some respects they confuse plaintiff's claim to judgment for the value of the securities with the limitation of his right to enforce any judgment against Axelrod, its partners, and other subordinated lenders.

■ Plaintiff rests his claim to judgment upon the following provision of the subordination agreement:

"If any of the securities, other property or interests therein in said account or accounts are sold, transferred or disposed of by anyone to whom such securities, other property or interests therein *have been pledged*, the Lender [plaintiff] shall have a contract claim against the Organization [Axelrod] for the return of like securities . . . to the same extent he would have had he loaned the securities . . . to [Axelrod] at the time of sale . . . ." [emphasis supplied]

However, plaintiff's reliance upon the foregoing clause to assert a contract claim is misplaced since this requires a pledge, followed by a sale or other distribution of the subordinated securities by the pledgee. Plaintiff has not alleged that the securities were pledged to the liquidator. However it may be characterized, the hiring by Axelrod of a liquidator with power to dispose of securities, including plaintiff's, did not carry with it a pledge of those securities; Axelrod owed no debt, nor was it obligated in any respect, to the liquidator for which Axelrod's assets, including plaintiff's stocks and bonds, were pledged as security.[1] Nor does it matter that in end result the liquidator's services, which are still being performed, are of benefit to Axelrod's creditors. The liquidator did not acquire the stocks, bonds and other Axelrod assets he sold as security for any debt, but rather disposed of them to effect an orderly liquidation to satisfy the claims of its creditors, general and otherwise, and to avoid, if possible, *the expense and delay of court proceedings.*[2] Plaintiff's securities were available for that purpose, since the subordination agreement permitted Axelrod to sell the plaintiff's securities and to use the proceeds to satisfy the claims of other creditors.[3]

■ However, that plaintiff has mistaken his ground for relief does not foreclose further consideration of his motion if it appears on the undisputed facts he is otherwise entitled to prevail.[4] To require him to move anew under a different legal theory for judgment based upon the non-return of his securities would be wasteful of the time, energy and resources of the litigants and the

1. *See* Wm. H. Wise & Co. v. Rand McNally & Co., 195 F.Supp. 621, 627 (S.D.N.Y.1961) ; Perkins v. Meyer, 302 N.Y. 139, 96 N.E.2d 744 (1951) ; Bank of Rochester v. Jones, 4 N.Y. 497, 507 (1851) ; Andrello v. Nationwide Mut. Fire Ins. Co., 29 App.Div.2d 489, 289 N.Y.S.2d 293 (1968) ; Restatement of Security § 1 (1941).

2. *See* Wm. H. Wise & Co. v. Rand McNally & Co., 195 F.Supp. 621, 627 (S.D.N.Y.1961).

3. Subordination agreement of May 17, 1971, p. 1.

4. *See* Broderick Wood Prods. Co. v. United States, 195 F.2d 433, 436 (10th Cir. 1952) ; Board of Nat'l Missions of Presbyterian Church v. Smith, 182 F.2d 362, 364–365 (7th Cir. 1950) ; *cf.* Rosenfeld v. Black, 319 F.Supp. 891, 896–897 (S.D.N.Y.1970), rev'd on other grounds, 445 F.2d 1337 (1971), petition for cert. dismissed, 409 U.S. 802, 93 S.Ct. 24, 34 L.Ed.2d 62 (1972).

courts. The maturity date of the loans, May 17, 1973, having passed, plaintiff was entitled upon demand to the return of his securities or their value subject, of course, to the priority claims of creditors as of May 17, 1973. That his securities are so subordinated does not deprive him of his right of recovery upon their non-return. While there is an issue as to whether plaintiff's $25,000 in municipal bonds were properly placed in his subordinated account,[5] this does not alter the fact that he is a creditor in the sum of $157,857.95, for which he is entitled to judgment against Axelrod absent the return of his securities on the maturity date. The enforcement of the judgment, against whom he may proceed, and restrictions, if any, upon the order of enforcement present other questions.

■ While payments have been made to customers and general creditors of Axelrod, the liquidator states that presently the assets of Axelrod are insufficient to meet those claims in full; that there are pending lawsuits against Axelrod's accountants and against a bonding company based upon alleged peculations by an Axelrod partner and others which, if successful, may yield recoveries sufficient to satisfy not only the balance of the outstanding claims in favor of customers and creditors, but those of plaintiff and other subordinated creditors; accordingly, it is urged that the entry of judgment in plaintiff's favor be withheld until the pending litigations upon those claims are terminated. In sum, it is urged that until all the assets and liabilities of Axelrod are marshalled and determined and provision is made for the payment of all creditors to whose claims plaintiff's is subordinate, judgment in his favor should be withheld. However, whether or not plaintiff is able to enforce a judgment is irrele-

vant to his right to a judgment. That claims exist in Axelrod's favor which, if successful, may yield sufficient sums to pay claims that are senior to plaintiff's does not preclude his right to judgment now. He is not required to forego his right to judgment while the liquidator engages in litigation with its uncertainty of result and inevitable delay. Furthermore, despite the liquidator's allegations to the contrary, one partner asserts that the partnership presently has available funds out of which plaintiff's claim can be paid. Under all the circumstances, there is no basis upon which to deprive plaintiff of judgment for the value of his unreturned securities. Plaintiff's judgment, however, in addition to being subordinated to the prior rights of general creditors against available assets of Axelrod, is subject to a further restriction. He is not entitled to a preference against other subordinated lenders; under the agreement he is entitled to share, after customers and general creditors have been paid, on a pro rata basis with other subordinated lenders.

■ There remain issues as to plaintiff's right to proceed against the individual assets of the general partners. Plaintiff's claim that the partners are liable is based upon section 26(2) of the Partnership Law, McKinney's Consol. Laws, c. 39, of the State of New York, which provides that all partners are jointly liable for all contractual "debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract."[6] He also relies on Axelrod's partnership agreement, which provides:

"The General Partners shall have unlimited liability for the repayment, satisfaction and discharge of all debts, liabilities and obligations of the Part-

---

5. If contrary to plaintiff's instructions the $25,000 were so placed, plaintiff may be a general creditor to that extent or have a separate claim for conversion.

6. N.Y. Partnership Law § 26(2) (McKinney 1948); see Salem v. Seigel, 126 N.Y.S.2d 214 (Sup.Ct.1953); Georgian Press, Inc. v. Hill, 180 Misc. 548, 45 N.Y.S.2d 561 (Sup. Ct.1943), aff'd, 181 Misc. 464, 48 N.Y.S.2d 316 (App.T.1944); Patrikes v. J. C. H. Service Stations, Inc., 180 Misc. 917, 924, 41 N.Y.S.2d 158, 167 (N.Y.City Ct.), aff'd, 180 Misc. 927, 46 N.Y.S.2d 233 (App.T.1943).

nership to the full extent of their respective assets."

While a number of the general partners appear to acknowledge that they are individually liable for the partnership obligations, they urge that such liability is imposed under the equitable doctrine of "marshalling assets" and that resort may be had against them only if the joint or partnership property is insufficient to pay the firm debts or it appears there can be no effective remedy without resort to individual property. The Court agrees.[7]

■ Two defendants also urge they are entirely exonerated from any individual liability to plaintiff. Defendant Christopher asserts he became a general partner as of June 1, 1971, after the subordination agreement of May 17, 1971 was entered into. He contends that his liability is limited to his interest in the partnership. He relies upon the section of the New York Partnership Law which provides that one "admitted as a partner into an existing partnership is liable for all the obligations of the partnership arising before his admission as though he had been a partner when such obligations were incurred, except that his liability shall be satisfied only out of partnership property."[8] Plaintiff, however, points to the provision of the partnership agreement referred to above whereby the partners specifically agreed to unlimited liability for the repayment of all partnership debts "to the full extent of their respective assets," and urges that this overcomes the statutory provision.

The section of the New York law upon which Christopher relies does not prevent an incoming partner by his individual contract from subjecting his individual property to the payment of the partnership debts.[9] The partnership agreement to which defendant was a party contained such a provision and is sufficient to overcome the statutory provision and subject his individual assets to the payment of the judgment in the event the partnership assets are insufficient to satisfy the judgment. Emphasis is given to this by the fact that Christopher upon his admission to the firm as a general partner, expressly agreed to be "subject to all the duties and liabilities of General Partners of the firm as expressed in the Articles of Partnership." [10]

■ Defendant Henry Warner also maintains he was not a partner when plaintiff delivered his securities to Axelrod. However, he, too, signed the partnership agreement containing the clause referred to above. Moreover, the partnership agreement, dated March 1971 with an effective date of January 1, 1971, lists Warner as a general partner. Warner asserts an additional defense based upon the fact he was not a partner when the securities were liquidated. This is without substance; the fact that he was not then a partner does not discharge his liability.[11]

■ Defendants Levine, Kaplan and Campione raise several contentions in an effort to defeat summary judgment, but submit nothing to deprive plaintiff of his right thereto. They urge in effect phantom issues based upon a claim that they "lack knowledge of facts essential to plaintiff's claim." Typical of their objections is an inquiry as to whether

---

7. *See* In re Peck, 206 N.Y. 55, 60–61, 99 N. E. 258, 259–60 (1912) ; Seligman v. Friedlander, 199 N.Y. 373, 380–381, 92 N.E. 1047, 1050· (1910) ; Stern v. Low, 27 A.D.2d 756, 277 N.Y.S.2d 756, 757 (1967).

8. N.Y. Partnership Law § 28 (McKinney 1948).

9. In re Peck, 206 N.Y. 55, 61, 99 N.E. 258, 260 (1912) ; Wood v. Macafee, 172 N.Y.S. 703, 707 (Sup.Ct.1918), aff'd, 191 App.Div. 937, 182 N.Y.S. 958 (1920) ; *cf.* Magrini v.

Jackson, 17 Ill.App.2d 346, 150 N.E.2d 387 (1958).

10. Amendment dated as of July 1, 1971 to Axelrod & Co. Articles of Partnership, Article Fifth.

11. *See* N.Y. Partnership Law §§ 26, 67 (McKinney 1948) ; In re Camhi, 28 Misc.2d 93, 208 N.Y.S.2d 162 (Sup.Ct.1960), rev'd on other grounds, 13 A.D.2d 752, 215 N.Y.S.2d 406 (1961).

the liquidation of Axelrod has been carried out properly and whether the firm has or should have assets from which to repay plaintiff's loan. Obviously this has no bearing on plaintiff's right to recovery. Their other objections are likewise without merit.

Plaintiff's motion for summary judgment is granted against all defendants who were general partners of Axelrod and who were served with process in this action. The judgment, in addition to being subordinated to the claims of creditors prior to May 17, 1973, shall also provide that it shall not be enforced against the separate property of such individual defendants unless plaintiff is unable to enforce its payment out of the joint partnership property.[12]

---

12. *See* Spencer Kellogg & Sons, Inc. v. Bush, 31 Misc.2d 70, 219 N.Y.S.2d 453 (Sup.Ct. 1961) ; Georgian Press, Inc. v. Hill, 180 Misc. 548, 45 N.Y.S.2d 561 (Sup.Ct.1943), aff'd, 181 Misc. 464, 48 N.Y.S.2d 316 (App. T.1944).