In the Matter of the Arbitration between **TEHRAN–BERKELEY CIVIL AND ENVIRONMENTAL ENGINEERS, Petitioner, Cross-Respondent-Appellant,**

v.

**TIPPETTS–ABBETT–McCARTHY– STRATTON, Respondent, Cross-Petitioner-Appellee.**

**Nos. 188, 240, Dockets 86–7422, 86–7438.**

United States Court of Appeals, Second Circuit.

Argued Sept. 30, 1986.

Decided April 20, 1987.

Maxeiner, of counsel), for petitioner, cross-respondent-appellant.

Frank H. Penski, New York City, (Nixon, Hargrave, Devans & Doyle and Abigail T. Reardon, of counsel), for respondent, cross-petitioner-appellee.

Before KEARSE and ALTIMARI, Circuit Judges, and STEWART, District Judge.[1]

ALTIMARI, Circuit Judge:

The political cataclysm which occurred during the late 1970s in the governmental structure of Iran and the repercussions felt by the international business community provide the backdrop for the instant appeal. Appellant Tehran-Berkeley Civil and Environmental Engineers ("Tehran-Berkeley") appeals from orders of the United States District Court for the Southern District of New York, dismissing its petition to compel arbitration, granting appellee Tippetts-Abbett-McCarthy-Stratton's ("TAMS") cross-petition for an order preliminarily and permanently staying and enjoining any arbitration proceeding before the American Arbitration Association, and declaring pursuant to Federal Rule of Civil Procedure 57 and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, that appellee is not a party to and is not liable for damages under the contract at issue. Appellant contends that the district court erred in failing to conduct a hearing, in holding the agreement between the parties to be unambiguous, in concluding that appellee is neither a party nor primary obligor under the contract, and in finding that appellant's cause of action lay properly against the Islamic Republic of Iran rather than against appellee.

For the reasons stated below, we vacate and remand.

### BACKGROUND

Appellee TAMS is a New York engineering and architectural consulting partnership. Abdul Aziz Farmanfarmaian & Associates ("AFFA") is an Iranian engineering

David B. Wolf, New York City, (Walter, Conston & Schurtman, P.C. and James R.

1. Honorable Charles E. Stewart, Jr., Senior Judge of the United States District Court for the Southern District of New York, sitting by designation.

firm. TAMS and AFFA created and equally owned TAMS–AFFA Consulting Engineers and Architects ("TAMS–AFFA"), an Iranian entity created for the sole purpose of performing services on the Tehran International Airport ("TIA") project. This performance was based on a contract ("CAO contract") dated March 19, 1975 between the Civil Aviation Organization of the Imperial Government of Iran on the one hand and TAMS and AFFA on the other. Under the CAO contract, TAMS and AFFA were to act as "Consultants" and were liable jointly and severally for all obligations under the contract.

The contract at issue on this appeal was entered into on August 12, 1975. Although TAMS and AFFA had entered into their partnership agreement as of that date, it was not until October 19, 1975 that the Iranian government certified that TAMS–AFFA was listed in the Register for Non-Commercial firms of Iran. Accordingly, the contract had to be negotiated and individually executed by principals of TAMS and AFFA and principals of appellant Tehran-Berkeley in Iran. Under this contract, Tehran-Berkeley agreed to perform soil exploration for the TIA project. Tehran-Berkeley was designated the "Contractor" in the contract, while TAMS and AFFA were designated "Consultant." The contract provides that the Consultant was to submit invoices for work performed by Tehran-Berkeley to CAO for payment, and required "[t]he Consultant [to] pay the Contractor immediately upon receipt of payment" from CAO. The contract contains an arbitration clause which provides that

> [a]ll the disputes that may arise between the Contractor and the Consultant whether relating to execution of the works under the Contract or relating to interpretation of any of the Paragraphs of the General Conditions or Technical Provisions or other documents attached to the Contract, shall according to the prevailing laws be settled through arbitration....

The political events which occurred in Iran beginning in 1978 are widely known. On June 19, 1979, the Islamic Revolutionary Council of the newly established Iranian Government passed the Bill Concerning Appointment of Provisional Directors to Supervise Productive, Industrial, Commercial, Agricultural and Service Units. This Bill authorized the Government to appoint "provisional directors" as managers for enterprises abandoned by their directors. Pursuant to this Bill, the Plan and Budget Organization of the Government of Iran appointed a "provisional director" for AFFA on July 24, 1979. This appointment was announced in the August 11th edition of the Official Gazette. By December of 1979, the "provisional director" expanded its powers, assuming control of the non-commercial partnership TAMS–AFFA. In particular, the "provisional director" assumed sole signature power of TAMS–AFFA's bank accounts, despite the requirement in TAMS–AFFA's Articles of Partnership that all checks be signed by representatives of both TAMS and AFFA. During the months of August through November 1979, TAMS representatives in Iran managed to rectify at least partially these violations of TAMS–AFFA's partnership agreement. However, the crisis in relations between the United States and Iran that developed in November of 1979, as a result of the seizure of American citizens in Iran, reversed this trend. The last remaining TAMS representative with signature authority left Iran in December, 1979. TAMS's letters and telexes to TAMS–AFFA concerning further work on the TIA project went unanswered.

Following the freeing of the American hostages in January, 1981 and the signing of the Algerian Accords, which *inter alia* established the Iran-United States Claims Tribunal, TAMS filed a claim against the Government of Iran seeking amounts allegedly due under the CAO contract and the value of its fifty percent interest in TAMS–AFFA. On June 29, 1984, the Claims Tribunal filed its decision, awarding TAMS the sum of $5,594,405 plus interest in the "dissolution value" of TAMS–AFFA. The Tribunal defined "dissolution value" as "the value of TAMS–AFFA after the collection of all assets and the discharge of all

obligations," noting that this value was "only a very rough evaluation." *Tippets, Abbett, McCarthy, Stratton v. The Government of Iran,* Iranian Assets Litigation Rep., 8820, 8826, 8828 (July 13, 1984). The Tribunal explicitly indicated "that [its] Award involves no adjudication of the rights and obligations of the parties to the [CAO] contract or of any *obligations* owed by TAMS–AFFA to the tax and social security authorities of Iran or *other third parties." Id.* at 8827. (footnote omitted) (emphasis added).

On October 31, 1985, appellant Tehran-Berkeley filed its Demand for Arbitration with the American Arbitration Association, seeking $999,922 plus interest from TAMS for soil and foundation investigations performed on the TIA project under the August 12, 1975 contract. By letter dated November 4, 1985 to the American Arbitration Association, TAMS, by its attorneys, informed the Association of its intention to seek a stay of arbitration and of its refusal to arbitrate the dispute.

Tehran-Berkeley filed and served a Petition to Compel Arbitration dated November 6, 1985 pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "Act"). Appellee TAMS filed an Answer to the Petition and a Cross-Petition to Stay Arbitration dated November 15, 1985.

Treating appellant's Petition and appellee's Cross-Petition as cross-motions for summary judgment, the district court in an Endorsed Memorandum dated April 24, 1986 dismissed the petition, holding that appellee was not a party to and was not liable under the August 12, 1975 contract. The court found the contract to be between appellant and a "single counter-contracting 'party'," TAMS–AFFA, not between appellant on the one hand and TAMS and AFFA, as separate entities, on the other.

As an alternative holding, the district court concluded that an action could not be maintained against TAMS as a partner, or the TAMS–AFFA partnership, since, as the Iran-United States Claims Tribunal found, the interests as well as the obligations of the partners had been expropriated by the Islamic Republic of Iran. The district

court held that "[w]here a government has seized a private entity, it and not the dispossessed owners, is to be looked to for fulfillment of third-party contracts."

In dicta, the district court further determined, based on the "express terms" of the contract, that appellee was not a primary obligor under the contract, but was instead merely a "conduit for payment" from CAO to Tehran-Berkeley. Based on that finding the district court concluded that CAO would have been an indispensable party to the action. This appeal followed.

### DISCUSSION

■ As an initial matter, this court must consider whether the arbitration provision at issue is broad enough in scope to cover the dispute at hand. *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962) ("whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties"). Courts have long recognized that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). The Supreme Court, however, has found that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983); *see Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionery Workers Union,* 430 U.S. 243, 254, 97 S.Ct. 1067, 1073, 5 L.Ed.2d 300 (1977) (recognizing "a strong presumption favoring arbitrability"); *see also AT & T Technologies v. Communications Workers,* 475 U.S. 643, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986).

In the present case, the arbitration provision provides for arbitration of "[a ]ll the disputes that may arise between the Contractor and the Consultant *whether relat-*

*ing to execution of the works under the Contract or relating to interpretation of any of the Paragraphs of the General Conditions or Technical Provisions or other documents attached to the Contract"* (emphasis added). Appellant prefers that this court focus on the broad phrase "all the disputes," whereas appellee would interpret the provision more narrowly, focusing instead on the qualifying phrase—"whether relating to ... contract" —which appears to limit the applicability of the provision to disputes relating to performance and to interpretations of contract provisions.

Appellant in its Demand for Arbitration seeks payment for work performed prior to the Iranian Revolution. There appears to be no dispute as to whether appellant is owed the amount claimed, and in fact it appears that TAMS–AFFA actually approved payment. Joint App. 24, 25–26, 27–28, 29, 30. Instead, the dispute centers on the question of which of the entities involved in the contract must make remittance. In order to resolve this dispute several key contract provisions involving payment procedures, *force majeure,* and termination must be interpreted. Notice requirements must be reviewed. Such a dispute most assuredly falls within the scope of the arbitration clause and accordingly is within the purview of the arbitrator.

■ Having determined that the arbitration provision covers appellant's claims, this court must address the principal issue on this appeal: whether, as defined under the Act, "the making of the arbitration agreement" was a genuine issue in dispute entitling petitioner to a hearing on this question prior to arbitration.

Section 4 of the Act delineates the limited function of the court in deciding petitions to compel arbitration. It provides in pertinent part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that *the making of the agreement for arbitration or the failure to comply therewith is not in issue,* the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... *If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue,* the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4 (emphasis added). Under section 4, a district court must compel arbitration unless the "making" of the arbitration agreement, or a party's "failure, neglect, or refusal" to arbitrate, is in question. *See Conticommodity Services Inc. v. Philipp & Lion,* 613 F.2d 1222, 1225 (2d Cir.1980). "[W]hether a person is a party to [an] arbitration agreement ... is included within the statutory issue of 'the making of the arbitration agreement.' " *Interocean Shipping Co. v. National Shipping & Trading Corp.,* 462 F.2d 673, 677 (2d Cir. 1972); *see McAllister Bros. v. A & S Transp. Co.,* 621 F.2d 519, 524 (2d Cir. 1980). We believe based on the record that the contract at issue is ambiguous as to whether TAMS–AFFA as an entity or TAMS and AFFA individually are parties to the contract, and conclude that the district court erred in dismissing appellant's petition and granting appellee's cross-petition without holding an evidentiary hearing.

The August 12, 1975 contract identifies the parties to the contract as follows: Tippetts-Abbett-McCarthy-Stratton, Consulting Engineers and Architects, 345 Park Avenue, New York, N.Y. 10022, U.S.A. and Abdol Aziz Farmanfarmaian and Associates of 118 Avenue Kakh, Tehran, Iran, hereinafter referred to as 'Consultant' and the firm of Tehran Berkeley, Civil & Environmental Engineers, Third St. No. 4, Miremad Takhte Tavoos, Tehran, Iran, hereinafter referred to as the 'Contractor'.

The contract was negotiated and executed individually by principals of TAMS, of

AFFA, and of Tehran-Berkeley. The partnership, TAMS–AFFA, did not purport to sign the contract; and, despite the fact that it was established, though not officially registered, as of August 1, 1975, it is not mentioned in the contract. Appellee TAMS focuses on the singular designations, "Contractor" and "Consultant," which were used throughout the contract and contends that the contract expressly indicates that it is *"between ... two parties"* (emphasis added). Appellee also suggests that the course of conduct between the parties confirms this reading of the contract. Conversely, appellant Tehran-Berkeley argues that these singular designations need not be interpreted to mean that TAMS and AFFA intended to act as a single entity, but instead may indicate that they entered the agreement as joint obligors. Appellant further contends that the Persian text may be translated so as to read not "between ... two parties," but by "the parties." Faced with such divergent interpretations of the contract the district court erred in not finding a genuine issue of fact and in not proceeding summarily to trial as section 4 requires. *McAllister Bros., supra* (district court erred in not holding a trial on issue of whether affiliated corporations were bound by contract); *see also El Hoss Engineering & Transport Co. v. American Independent Oil Co.,* 289 F.2d 346, 351 (2d Cir.) (issues of fact should not be decided on affidavits), *cert. denied,* 368 U.S. 837, 82 S.Ct. 51, 7 L.Ed.2d 38 (1961); *see generally Almacenes Fernandez, S.A. v. Golodetz,* 148 F.2d 625, 628 (2d Cir.1945) (evidence substantiating reading of agreement necessary for trial under section 4). Accordingly, we remand to the district court for a hearing on the question of whether TAMS–AFFA as an entity or TAMS and AFFA individually are parties to the contract.

Should the trier of fact find that TAMS is a party to the contract in its individual capacity, the district court should compel arbitration and refer all remaining questions to the arbitrator including those relating to CAO's obligations, if any, under the contract and to the joinder of AFFA.