888 F.2d 239
 In the Matter of the Arbitration between TEHRAN-BERKELEY
CIVIL AND ENVIRONMENTAL ENGINEERS,
Petitioner-Cross-Respondent-Appellee,
and
TIPPETTS-ABBETT-McCARTHY-STRATTON,
Respondent-Cross-Petitioner-Appellant.
 No. 886, Docket 88-9064.
 United States Court of Appeals,
Second Circuit.
 Argued March 21, 1989.
Decided Oct. 20, 1989.
 
 Frank H. Penski, New York City (Abigail T. Reardon, John A. Rudy, Nixon, Hargrave, Devans & Doyle, New York City, of counsel), for respondent-cross-petitioner-appellant.
 David B. Wolf, New York City (Walter, Conston, Alexander & Green, P.C., New York City, of counsel), for petitioner-cross-respondent-appellee.
 Before OAKES, Chief Judge, and KEARSE and MAHONEY, Circuit Judges.
 MAHONEY, Circuit Judge:
 
 
 1
 This is an appeal from a summary judgment entered in the United States District Court for the Southern District of New York, Richard Owen, Judge, compelling Respondent-Cross-Petitioner-Appellant Tippetts-Abbett-McCarthy-Stratton ("TAMS") to arbitrate a claim of $999,922 plus interest brought against it by Petitioner-Cross-Respondent-Appellee Tehran-Berkeley Civil and Environmental Engineers ("Tehran-Berkeley") under a contract for soil and foundation investigation in connection with the construction of an airport in Tehran, Iran.
 
 
 2
 This case was previously before this court in Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton, 816 F.2d 864 (2d Cir.1987) ("Tehran-Berkeley I"), familiarity with which is assumed. In Tehran-Berkeley I, the district court had ruled that TAMS, a New York engineering and architectural consulting partnership, could not be compelled to arbitrate a claim by Tehran-Berkeley against a partnership of which TAMS was a partner. The partnership was styled "TAMS-AFFA Consulting Engineers and Architects" ("TAMS-AFFA"). The other partner was Abdul Aziz Farmanfarmaian & Associates ("AFFA"), an Iranian engineering firm.
 
 
 3
 On appeal, we vacated and remanded for "a hearing on the question of whether TAMS-AFFA as an entity or TAMS and AFFA individually are parties to the contract" with Tehran-Berkeley. 816 F.2d at 869. On remand, the district court concluded that "TAMS/AFFA as a joint venture ... entered into this contract with Tehran-Berkeley," and that "TAMS, as a partner, is properly a party to arbitration, and such arbitration should be compelled."
 
 
 4
 TAMS now contends that the district court's determination that TAMS-AFFA contracted as a joint venture with Tehran-Berkeley bars compelling TAMS to arbitrate Tehran-Berkeley's claim. We disagree, and accordingly affirm.
 
 Background
 
 5
 The facts underlying this litigation are comprehensively stated in Tehran-Berkeley I, and will be briefly summarized here. TAMS and AFFA were parties to a series of joint venture agreements dating back to 1968 with respect to their anticipated work on construction of the Tehran International Airport ("TIA"). This anticipation was crystallized in a contract dated March 19, 1975 (the "CAO Contract") between TAMS and AFFA, on the one hand, and the Civil Aviation Organization of the Imperial Government of Iran (the "CAO"), on the other, under which TAMS and AFFA were to act together as "Consultant" to the CAO for construction of the TIA, with joint and several liability as to their obligations under the CAO Contract. The CAO Contract contemplated that "[f]or the purpose of carrying out its obligations [thereunder], the Consultant may establish an independent entity under the laws of Iran and register the same."
 
 
 6
 As of August 1, 1975, TAMS and AFFA executed a document forming TAMS-AFFA, a partnership intended to perform their obligations under the CAO Contract, with equal ownership for TAMS and AFFA in the partnership.[1] TAMS-AFFA was not registered in the Iranian Register for Non-Commercial Firms, however, until October 16, 1975.
 
 
 7
 The contract at issue here (the "Tehran-Berkeley Contract") was dated August 12, 1975 and was executed by TAMS and AFFA, on the one hand, as "Consultant," and by Tehran-Berkeley, on the other, as "Contractor." It called for Tehran-Berkeley to conduct "soils and foundations investigations" in connection with the TIA project, and included an arbitration clause covering "[a]ll the disputes that may arise between the Contractor and the Consultant."[2] Invoices for work performed were to be submitted by the Contractor to the Consultant for review, and then by the Consultant to the CAO for payment; the Consultant was to pay the Contractor "immediately upon receipt of payment from the CAO."
 
 
 8
 As stated in Tehran-Berkeley I, the revolution in Iran resulted in the seizure of AFFA and TAMS-AFFA by the government of Iran, and ultimately in an award to TAMS by the Iran-United States Claims Tribunal of $5,594,405 plus interest for TAMS' share of the "dissolution value" of TAMS-AFFA, defined as "the value of TAMS-AFFA after the collection of all assets and the discharge of all obligations." See 816 F.2d at 866-67. The Tribunal stated "that [its] Award involve[d] no adjudication of the rights and obligations of the parties to [the CAO Contract] or of any obligations owed by TAMS-AFFA to ... third parties." See id. at 867.
 
 
 9
 On October 31, 1985, Tehran-Berkeley filed a demand for arbitration against TAMS with the American Arbitration Association, seeking $999,922 plus interest for unpaid work performed on the TIA project under the Tehran-Berkeley Contract. TAMS refused to arbitrate the dispute, whereupon Tehran-Berkeley commenced this litigation by filing a petition to compel arbitration pursuant to 9 U.S.C. Sec. 4 (1982).
 
 
 10
 The district court granted summary judgment to TAMS and dismissed the petition, concluding that Tehran-Berkeley contracted "with but a single counter-contracting 'party', the 'consultant' which was the TAMS-AFFA partnership earlier established on August 1, 1975 to do consulting work on the Tehran Airport." The district court concluded that because TAMS-AFFA was expropriated by Iran, "petitioner's cause of action no longer lies against TAMS as a partner, or the TAMS-AFFA partnership itself, but against some agency of the Islamic Republic of Iran which is its successor." The district court further expressed "as dictum" its view that TAMS-AFFA "was only a conduit for payment" from CAO to Tehran-Berkeley, thus requiring either that CAO be joined as an indispensable party, or that Tehran-Berkeley establish that CAO had made payments to TAMS-AFFA for Tehran-Berkeley's account which had not been transmitted to Tehran-Berkeley.
 
 
 11
 On appeal, we vacated the summary judgment, stating:
 
 
 12
 The contract was negotiated and executed individually by principals of TAMS, of AFFA, and of Tehran-Berkeley. The partnership, TAMS-AFFA, did not purport to sign the contract; and, despite the fact that it was established, though not officially registered, as of August 1, 1975, it is not mentioned in the contract. Appellee TAMS focuses on the singular designations, "Contractor" and "Consultant," which were used throughout the contract and contends that the contract expressly indicates that it is "between ... two parties" (emphasis added). Appellee also suggests that the course of conduct between the parties confirms this reading of the contract. Conversely, appellant Tehran-Berkeley argues that these singular designations need not be interpreted to mean that TAMS and AFFA intended to act as a single entity, but instead may indicate that they entered the agreement as joint obligors. Appellant further contends that the Persian text may be translated so as to read not "between ... two parties," but by "the parties." Faced with such divergent interpretations of the contract the district court erred in not finding a genuine issue of fact and in not proceeding summarily to trial as [9 U.S.C.] section 4 requires.
 
 
 13
 Tehran-Berkeley I, 816 F.2d at 868-69.
 
 
 14
 We remanded to the district court "for a hearing on the question of whether TAMS-AFFA as an entity or TAMS and AFFA individually are parties to the contract," id. at 869, noting that "[s]hould the trier of fact find that TAMS is a party to the contract in its individual capacity, the district court should compel arbitration and refer all remaining questions to the arbitrator including those relating to CAO's obligations, if any, under the contract and to the joinder of AFFA," id.
 
 
 15
 On remand, the district court framed the issue as "whether TAMS/AFFA was a joint venture, with joint and several liability for each venturer, or whether it was in fact a corporate entity, a 'moassesseh '[3] under Iranian law, not individually liable on the contract with Tehran-Berkeley." The district court concluded that:
 
 
 16
 TAMS/AFFA as a joint venture, not as a corporate moassesseh, entered into this contract with Tehran-Berkeley. This is so because TAMS/AFFA's October, 1975 registration as a moassesseh occurred many months after it entered into the contract, in August, 1975. Though the technicality of registration would not control if there were more substantive evidence of the parties' intent, such evidence is lacking here. The course of dealing evidence that TAMS presents, correspondence addressed and payments made to "TAMS/AFFA," the contract's reference to "two parties," is quite compatible with Tehran-Berkeley's claim that it thought that it was dealing with the joint venture TAMS/AFFA.
 
 
 17
 The district court ordered TAMS to arbitrate the dispute. In so ruling, the court "express[ed] no view on the effect of the Iranian government's expropriation, or on the necessity of joining as a party the other partner, AFFA, as these issues are now properly before the arbitrator."
 
 
 18
 TAMS thereafter brought this appeal.
 
 Discussion
 
 19
 Before considering the merits, we must decide what law to apply to this case. The Tehran-Berkeley Contract does not specify the law which is to govern the agreement, and neither party has briefed or argued the issue. Iranian law could apply, since the contract was executed and performed in that country. The parties' briefs, however, rely on New York law. Under the principle that implied consent to use a forum's law is sufficient to establish choice of law, see Larsen v. A.C. Carpenter, Inc., 620 F.Supp. 1084, 1103 (E.D.N.Y.1985) (collecting cases), affirmed, 800 F.2d 1128 (2d Cir.1986) (mem.), we will apply New York law to this case.
 
 
 20
 A review of the judgment in this case entails an evaluation of the district court's response to the inquiry we posed on remand, and the legal conclusions to be drawn from that response. We directed the district court to determine whether "TAMS-AFFA as an entity or TAMS and AFFA individually are parties to the contract." It might appear that the district court's determination that "TAMS/AFFA as a joint venture, not as a corporate moassesseh, entered into this contract" is not responsive to the inquiry we posed.
 
 
 21
 In Tehran-Berkeley I, however, we noted Tehran-Berkeley's contention that the evidence "need not be interpreted to mean that TAMS and AFFA intended to act as a single entity, but instead may indicate that they entered the agreement as joint obligors," 816 F.2d at 869, indicating immediately thereafter that this interpretation had adequate merit to preclude summary judgment for TAMS, id. It is clear, furthermore, that TAMS and AFFA, the contracting parties with Tehran-Berkeley, had been engaged on the TIA project as joint venturers since 1968 pursuant to a series of joint venture agreements, and that the August 1, 1975 agreement creating TAMS-AFFA as a partnership between TAMS and AFFA to perform the CAO Contract is completely consistent with that history. On this appeal, both parties have accepted the district court's determination that TAMS-AFFA is a joint venture, although arguing to different conclusions from that premise. We accordingly join the parties in accepting that premise, and proceed to consider its legal implications for the resolution of this appeal.
 
 
 22
 We begin by noting that TAMS and AFFA, rather than TAMS-AFFA, executed and entered into the Tehran-Berkeley Contract. Accordingly, we read the district court's ruling that TAMS-AFFA "as a joint venture ... entered into this contract" as a determination that TAMS and AFFA executed the contract as joint obligors and in behalf of the TAMS-AFFA joint venture. Under New York law, the legal consequences of a joint venture are equivalent to those of a partnership. Gramercy Equities Corp. v. Dumont, 72 N.Y.2d 560, 565, 531 N.E.2d 629, 632, 534 N.Y.S.2d 908, 911 (1988) (citing Pedersen v. Manitowoc Co., 25 N.Y.2d 412, 419, 255 N.E.2d 146, 150, 306 N.Y.S.2d 903, 909 (1969)).
 
 
 23
 New York law further provides that partners are liable:
 
 
 24
 1. Jointly and severally for everything chargeable to the partnership under sections twenty-four [tort law] and twenty-five [breach of trust].
 
 
 25
 2. Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract.
 
 
 26
 N.Y. Partnership Law Sec. 26 (McKinney 1988).
 
 
 27
 Joint liability for contract obligations of a partnership, however, does not preclude a suit against an individual partner in all circumstances. Rather, as was said in Cunard Line Ltd. v. Abney, 540 F.Supp. 657 (S.D.N.Y.1982):
 
 
 28
 The joint nature of the obligation does not imply that the joint obligor is immune from being sued individually. Caplan v. Caplan (1935) 268 N.Y. 445, 448, 198 N.E. 23. It only gives the joint obligor the right to insist that the plaintiff join other such obligors if joinder be possible. Jones Knitting v. A.M. Pullen & Co. (S.D.N.Y.1970), 50 F.R.D. 311 at 315....
 
 
 29
 This general rule applies to individual partners since they are a genus in the wider family of joint obligors. However, for partners there is, under New York law, a prerequisite to individual liability on a joint partnership obligation: "resort may be had against them only if the joint or partnership property is insufficient to pay the firm debts or it appears there can be no effective remedy without resort to individual property." Wisnouse v. Telsey (S.D.N.Y.1973) (Weinfeld, J.), 367 F.Supp. 855, 859, and cases there cited at note 7. Indeed, a complaint that fails to allege that a partnership is insolvent and unable to pay its debts is insufficient to state a claim for breach of contract against the partners as individuals. Pine Plains Lumber Corp. v. Messina (3rd Dep't 1981), 78 A.D.2d 271, 435 N.Y.S.2d 381, 384. See also Helmsley v. Cohen (1st Dep't 1977), 56 A.D.2d 519, 391 N.Y.S.2d 522, 523.
 
 
 30
 Id. at 659-60 (footnote omitted).
 
 
 31
 In a footnote appended to the foregoing quotation, the district court stated: "[t]he individual joint obligor is a necessary party (not an indispensable one) in an action against one or more of the joint individual obligors, see, 3A Moore's Federal Practice p 19.11; and Fed.R.Civ.P. 19 states the conditions under which joinder may be dispensed with." Id. at 659 n. 3. We have construed Fed.R.Civ.P. 19 as not mandating the joinder of joint obligors. See Greenleaf v. Safeway Trails, Inc., 140 F.2d 889, 890-91 (2d Cir.), cert. denied, 322 U.S. 736, 64 S.Ct. 1048, 88 L.Ed. 1569 (1944); see also Aldrich v. Upstate Auto Wholesale of Ithaca, Inc., 564 F.Supp. 390, 392 (N.D.N.Y.1982); 7 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure Sec. 1613, at 183 (1986).
 
 
 32
 We now turn to the statute, 9 U.S.C. Sec. 4 (1982), which defines the very narrow function of the district court, and derivatively of this court, in the instant litigation. This provision states in pertinent part:
 
 
 33
 A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.
 
 
 34
 9 U.S.C. Sec. 4 (1982) (emphasis added).
 
 
 35
 Our remand in Tehran-Berkeley I required the determination which the statute specifies. The district court thereafter ruled, in response to motions for summary judgment, that "the making of the arbitration agreement" took place between Tehran-Berkeley and "TAMS/AFFA as a joint venture." Since the entity TAMS-AFFA did not execute the Tehran-Berkeley Contract (which includes the arbitration agreement here in issue) and is not named as a party therein, we take this to mean that TAMS and AFFA, entities which did execute the Tehran-Berkeley Contract and are named as parties therein, did so as joint venturers; i.e., as partners in the partnership TAMS-AFFA. Accordingly, "the making of the arbitration agreement" is established within the meaning of 9 U.S.C. Sec. 4 (1982), and the parties must "proceed to arbitration in accordance with the terms of the agreement." Id.
 
 
 36
 Specifically, both Tehran-Berkeley and TAMS entered into the Tehran-Berkeley Contract which includes the arbitration agreement in question, determined in Tehran-Berkeley I to cover the claims made by Tehran-Berkeley in this litigation, and Tehran-Berkeley may therefore, as a threshold matter, require TAMS to arbitrate its claims pursuant to the arbitration agreement. In so ruling, we do not purport to decide any of the issues which may arise in the arbitration, including without limitation the possible joinder of AFFA or TAMS-AFFA, TAMS' contention that TAMS-AFFA was only a conduit for the payment to Tehran-Berkeley of monies received from CAO for Tehran-Berkeley's account, or whether, under New York or other governing law, the substantive conditions for liability of a joint obligor are present.
 
 Conclusion
 
 37
 The judgment of the district court is affirmed.
 
 
 
 [1]
 TAMS strenuously contends that although dated August 1, 1975, this document actually was not executed until the following month, after the (August 12, 1975) execution of the contract at issue in this litigation. In any event, the document specified that "[t]he term of the Partnership shall begin from twenty-seventh Khordad 1354." This is a date in the Persian calendar whose Gregorian equivalent is June 18, 1975. See Wustenfeld-Mahlersche Vergleichungs Tabellen 46-47 (Bertold Spuler ed. 1961)
 
 
 [2]
 Tehran-Berkeley I, 816 F.2d at 867-68, establishes that the arbitration clause covers the claims made by Tehran-Berkeley in this litigation
 
 
 [3]
 The submissions to this court have not enlightened us significantly as to the qualities and characteristics of a "moassesseh" under Iranian law. We agree with the district court, in any event, that TAMS-AFFA entered into the Tehran-Berkeley Contract as a joint venture (or, more precisely, that TAMS and AFFA did so as joint venturers), so the later-formalized status of TAMS-AFFA as a "moassesseh" is not germane to any issue on this appeal