**Arthur Magrini, Plaintiff-Appellee, v. Waddell Jackson et al., Defendants.**

**Gen. No. 10,133.**

Third District.

May 2, 1958.

Rehearing denied and opinion modified June 2, 1958.

Released for publication June 2, 1958.

 ██

Greaves and Harper, of Champaign, for appellants.

Robert C. Summers, and Busch and Harrington, both of Champaign, for appellee.

JUSTICE REYNOLDS delivered the opinion of the court.

In the original complaint in this cause, the plaintiff Arthur Magrini sued Waddell Jackson and Pauline Smith for $17,750 praying judgment against said defendants, jointly and severally. The original complaint alleged that on or about September 13, 1952, the plaintiff sold a certain restaurant and tavern equipment to Ernest Englund, Jr. and June Thompson for $26,000, and that possession of the same by Englund was on or about January 1, 1953. Later, by leave granted, an amended complaint was filed adding Ernest Englund, Jr., as a party defendant, changing the amount claimed from $17,750 to $17,250 and alleging that on September 13, 1952, the plaintiff sold to the defendant Ernest Englund, Jr. certain tavern and restaurant equipment for the sum of $25,000; that Ernest Englund, Jr. took possession thereof; that thereafter on January 7, 1953, said Ernest Englund, Jr. entered into a written partnership agreement with the defendants Waddell Jackson and Pauline Smith to operate a tavern restaurant; that at the time of the formation of the partnership there was due plaintiff $17,250 with accrued interest; that the partnership assumed and agreed to pay the indebtedness due the plaintiff; that the total amount due plaintiff at the time of the filing of the complaint was $14,250; where-

fore plaintiff prayed for judgment against the defendants. The defendant Englund, being outside the country, was not served with process and filed no appearance. The complaint was further amended by deleting the reference to June Thompson in the original allegation of sale of the equipment on September 13, 1952 to Ernest Englund, Jr., and June Thompson and changing the allegation of the original price of such sale from $26,000 to $25,000.

The defendants Jackson and Smith, answered the amended complaint admitting the execution of the partnership agreement; admitting that they thereby became partners with Englund in the operation of the tavern restaurant; admitting that at the time of the formation of the partnership there was due to plaintiff $17,250; alleging that the obligation to plaintiff was the personal obligation of Englund and denying that defendants were indebted to plaintiff. Affirmative defenses were also alleged in the answer as follows:

(1) Fraud on the part of Englund to induce defendants to enter into the partnership agreement.

(2) That plaintiff was relegated to partnership assets only for the collection of his obligation as provided by Illinois Revised Statutes, Chapter 106½, paragraph 17.

(3) That there were no partnership assets and plaintiff is relegated to his remedy of repossessing the tavern and restaurant equipment sold.

(4) That all partners must be served before proceeding against any of the partners.

Plaintiff replied to the affirmative defenses that it was not informed as to (1) but that the same does not constitute a defense; that (2) has no application and does not constitute a defense; that (3) does not constitute a defense and that (4) is a matter of law theretofore passed upon by the court.

349

The cause was tried by the court without a jury and judgment was entered against the defendants Smith and Jackson in the sum of $14,318.39. This appeal seeks to reverse this judgment.

The testimony and documentary evidence reveals that in 1951 the plaintiff commenced the operation of the tavern restaurant hereinbefore referred to. He had a lease to the premises from the Wilson Park Club. He owned the equipment in the tavern restaurant. In September, 1952, the plaintiff sold to Ernest Englund, Jr. under a written conditional sales contract, all of this equipment. By the conditional sales contract Englund paid $7,000 down and agreed to pay the balance of $18,000 at the rate of $250 per month commencing November 1, 1952, with interest at 3 per cent annually computed monthly on the unpaid balance. The conditional sales contract contains the usual provisions reserving title in the vendor until full payment of the purchase price. At the same time, plaintiff obtained the consent of Wilson Park Club to an assignment of the lease to Englund and the assignment was made. On September 13, 1952, Englund entered into possession of the tavern restaurant and commenced its operation.

A short time later Englund approached the defendant Jackson about a loan. These parties then discussed the advisability of Jackson putting money into the business and the formation of a partnership. This discussion led to the signing of the written partnership agreement which is the main source of the controversy in this case.

The partnership agreement was entered into between Englund, Jackson and Smith on January 7, 1953. It recites that the parties become partners under the name of "8 O'clock Club" to operate a night club; that Jackson and Smith have contributed $6,534.33 in cash and that Englund has contributed the lease, stock

350

of goods, fixtures and good will which the parties value at the same amount. The agreement provides that Englund shall be the full time manager at a weekly salary of $75.00; that all leases, licenses and policies of insurance shall be deposited in a designated bank and Englund alone will issue checks on the account. The agreement then provides:

"The parties will at all times during this partnership bear, pay and discharge equally all expenses that may be required for the support and management of the said business. All gains or losses shall be divided equally between them. On the first day of each month hereafter, the said manager shall carefully and accurately prepare and submit a report covering the financial status of the said business for the preceding month, and, in the event of an excess of funds on deposit in said bank over that which he may deem necessary to retain for contingencies in said account, remains in said bank account, divide the same into two equal parts, retaining one part for himself and giving the other part to his aforesaid partners. The said manager shall not incur any indebtedness by contract or otherwise over the sum of Two Hundred Fifty Dollars ($250.00), without the consent of his partners. It is mutually understood that ARTHUR MAGRINI is the owner of a chattel mortgage covering the chattels enumerated in said mortgage, and that there is now due approximately Seventeen Thousand Two Hundred Fifty Dollars ($17,250.00) on said mortgage; that when said mortgage has been fully paid that said chattels shall belong to the parties hereto in equal shares, and that the payments on said mortgage shall be made from the funds in the partnership as part of the operating expense.

"The usual books of account will be properly posted and available to both parties. Each partner shall at all times discharge his separate debts and engage-

ments and to indemnify the partnership property and other partners from such debts. Either partner at the end of the first year or any subsequent year may retire on giving not less than two months previous notice in writing to the other partners."

The evidence further shows that from January 7, 1953, through July 7, 1953, the partnership grossed $36,774.66, all of which was deposited in the bank designated by the partnership agreement. During this period checks totalling $36,152.92 were drawn on the account, of which about two-thirds of this amount was for payroll and merchandise. The remaining checks were for advertising, utilities, taxes, rent, and the like, and 6 checks in the amount of $310 each payable to the plaintiff for credit on the conditional sales contract. These checks are all dated around the first of each month commencing in February, 1953, and ending July 3, 1953. In addition, there are 4 checks in the same amount payable to plaintiff dated in September, October, November and December and drawn on the same bank by the wife of Englund under a power of attorney from him. All of the 10 checks bear the name under which the tavern restaurant was operated, to-wit: "8 O'clock Club, Danville Road." No other payments were made to plaintiff on the conditional sales contract.

 The rule applicable to a situation as thus presented is succinctly stated in 68 C. J. S. no. 80 at page 520 as follows:

"The individual debts of partners, whether contracted by them before the establishment of the partnership, or in establishing it, or during its existence, may be converted into firm debts, by the mutual consent of the partners, if the firm is solvent. An agreement by partners taking over the business of one of them to assume the debts of the former owner may, in the absence of an express agreement, be inferred

from facts and circumstances; but an express or implied agreement is necessary to create such liability, and a person becoming a member of an existing firm, or forming a partnership with another in the latter's existing business, does not thereby automatically become liable for the debts already incurred."

Thus, if the parties in forming a partnership, agree to convert an individual debt into a debt of the partnership, they all become liable individually for the debt so converted, just as though the partnership had contracted the debt in the first instance, since it is provided by Section 15 of the Uniform Partnership Act that:

"All partners are liable

"(a) Jointly and severally for everything chargeable to the partnership under Sections 13 and 14.

"(b) *Jointly for all other debts and obligations of the partnership;* but any partner may enter into a separate obligation to perform a partnership contract." (Emphasis supplied.)

This rule finds support in Hoffman v. Stewart, 184 Ill. App. 66. In that case an individual named Thompson had a lease on a theater. He also had a contract with a prima donna to sing at his theater on a stipulated weekly salary. With these two assets in hand, he entered into an agreement with two other individuals, construed by the court to be a partnership agreement. By the agreement Thompson was to be manager of the enterprise known as Thompson Opera Co. at a weekly salary; that funds received in the enterprise should be deposited in a designated bank and drawn out by Thompson on checks signed by him and countersigned by one of the other partners. The prima donna sang, and, not having been paid her weekly stipend as contracted for with Thompson, she sued all three partners. In affirming a recovery the court said:

353

"It is true that a person who enters into partnership with another does not thereby become liable to the creditors of his partner for anything done before he became a partner, yet there are exceptions to the rule. One is that where a contract made by a person or firm remains executory until a partnership is created or a new partner is admitted into the firm, and such contract, while it remains executory, is adopted by the incoming partner, who acquires all the benefit as if he had been a partner in the original transaction, a promise may be implied to assume the liability of the partner or firm on such contract. Frazer v. Howe, 106 Ill. 563; Lucas v. Coulter, 104 Ind. 81; Watt v. Kirby, 15 Ill. 200; Hellsby v. Mears, 5 B. & C. 504, 11 E. C. L. 539; Ex parte Peele, 6 Ves. Jr., 602–604.

"In this case Stewart and Marhoefer knew that Thompson had made contracts with plaintiff and other players and knew that she and they were playing at the Angelus Theatre for the benefit of themselves and Thompson, and we think that the court might properly find that they became liable with Thompson to pay her for her services."

In Peterson & Kimball Co. v. Thompson, 192 Ill. App. 589, a companion case against the same defendants, the same conclusion was reached in a suit to recover for the price of programs, slips, cuts, etc., ordered by Thompson prior to the formation of the partnership, and used in the business.

In the case at bar, as in the foregoing cases, the contract forming the basis of liability was executory. In the case at bar, as in these cases, the newly formed partnership received the benefit of the original contract, i. e. the use of the equipment. To these factors must be added the additional factors in the case at bar, that by the partnership agreement the debt to plaintiff was specifically recognized; that it was expressly provided that payments on the conditional sales contract

should be made out of partnership funds; that payments were in fact made to plaintiff out of partnership funds; and that the partners agreed, in effect, that if the income to the partnership was not sufficient in any given month to pay the expenses of operation, including the payment to plaintiff, they would each contribute equally to make up the difference. There is one additional consideration, and that is, that it is significant that following the provision for payment of plaintiff's obligation from partnership funds the agreement provides:

"Each partner shall at all times duly and punctually pay and discharge *his separate private debts*—and engagements, whether present or future, *and keep indemnified therefrom,* and from all actions, proceedings, costs, claims and demands in respect thereof, *the partnership property* and the other partners." (Emphasis supplied.)

■ This provision, following so closely the provision for payment of the plaintiff's indebtedness from partnership funds, strongly emphasizes the view that the plaintiff's indebtedness was not regarded by the parties to the agreement, as a private and separate debt of Englund, but that it was regarded and intended to be, thereafter, a partnership obligation. If the debt to plaintiff was regarded as the private debt of Englund, and one for which the partnership and hence defendants individually were not liable, no reason is suggested by counsel for appellants as to why the payments to plaintiff from January to December were made out of partnership funds, apparently with the acquiescence of the defendants Jackson and Smith, since the record is barren of any objection to this on their part. Further, if the debt to plaintiff was to be regarded as the private debt of Englund, there was no occasion to specifically mention it in the partnership agreement and to undertake to provide for its pay-

ment, since the agreement provided that, "each partner shall at all times discharge his separate debts." The inevitable conclusion is that the debt to plaintiff was not to be considered as the separate debt of Englund. The provision in the agreement that upon full payment of the amount due plaintiff, the property covered by the conditional sales contract should belong to the parties (the partnership) strengthens this view. Title to the property could not, in any event, vest in the partnership, until the amount due under the conditional sales contract had been paid.

■ "Defendants contend that by virtue of Section 17 of the Uniform Partnership Act, plaintiff is restricted to partnership assets in the collection of his indebtedness. This section is not applicable where, as here, there is an assumption of the indebtedness by the incoming partners."

■ It is suggested that because plaintiff had no direct dealings with the defendants Jackson and Smith, he cannot rely upon any assumption of his debt in the partnership agreement. This agreement falls within the category of a third party beneficiary contract. Being such the creditor can take advantage of it without being a party to it.

■ The defendants contend that the Court should have allowed the defendants' motion to add June Thompson and Glenn Thompson, her husband as additional party defendants. The evidence does not support this contention. The lease from Wilson Park Club, Inc., to Arthur Magrini was assigned by Magrini to Ernest Englund, Jr., and June E. Thompson. That seems to be the only participation of June Thompson in the whole transaction. She was not a party to the conditional sales agreement between Magrini and Englund, had no interest in the partnership between Englund, Jackson and Smith, and cannot in any way be involved in the present suit, simply because of an

interest in a lease. The record and the evidence fails to show any interest on her part that would make her or her husband necessary parties. She was not a joint obligor so as to be subject to service under the third party complaint provisions in Section 25(2) of the Civil Practice Act. That section provides that a defendant may by third party complaint bring in as a defendant a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. There was no liability shown on her part to the defendants or the plaintiff. She had no interest or title which a judgment for the plaintiff or the defendants would affect. The cases cited by the defendants, namely Hairgrove v. City of Jacksonville, 366 Ill. 163, and Bernero v. Bernero, 363 Ill. 328, lay down the rule that is applicable to this case. If June Thompson's interest was merely incidental and she had no direct or immediate interest in the subject matter, or if a complete determination of the case could be had without her being made a party, then she is not a necessary party.

▮ The suit was brought against three defendants, but because Ernest Englund was out of the United States, service could only be had on Waddell Jackson and Pauline Smith. It is the opinion of this court that it was not necessary to have service on Englund before proceeding against the other partners. We think the trial court was right in his reasoning, based on the law as expressed in Sherburne v. Hyde, 185 Ill. 580, and the case of Fleming v. Ross, 225 Ill. 149. Those cases hold that all the partners must be made parties defendant, but where one or more of the parties are not served, the court does have the power to render judgment against those partners on whom service was had. The matter of a suit against Ernest Englund, therefore, is not before this court if we follow those decisions. As said in the Sherburne v. Hyde case, supra,

"It does not follow that because the plaintiff cannot elect to sue one, only, of several partners who are jointly liable, but must sue all, that judgment may not be rendered, as this section provides, against one, or more than one, who are served, and the prescribed steps then taken to bring in and make the remaining members of the firm parties to the judgment. A plaintiff cannot, in any case, bring his action against more than one and less than all of his joint debtors, but under this statute he may sue all, whether partners or not, and take judgment against so many as are served or who appear, and the rest may be made parties to the judgment by summons in the nature of *scire facias.*"

This being true, it is immaterial so far as this case is concerned, whether or not the plaintiff has any further right of action against Englund since the point here is that where all are named as defendants, and only two are served, the court has the power to render judgment against those served.

■ The point raised in the appeal, namely that the partners were induced by fraudulent misrepresentation to assume the obligation to Magrini is not supported by the evidence. The defendants offered no evidence, and whether or not the obligation was a chattel mortgage or a conditional sale contract is not important and would not support the allegation of fraudulent misrepresentation. The incoming partners knew that there was owed to Magrini approximately $17,250, and for the determination of this appeal it matters little the form of the obligation.

The judgment will be affirmed.

Affirmed.

CARROLL, P. J. and ROETH, J., concur.