**RESOLUTION TRUST CORPORATION, as Receiver for First Federal Savings Bank of East Alton, in Receivership, Plaintiff,**

v.

**TEEM PARTNERSHIP, a Colorado general partnership; John A. Winters, Michael P. Bahr, Stevan G. Strain and Neal M. Price, individually and as general partners of the Teem Partnership, Defendants,**

v.

**Jonathan F. CLARK, Colorado Rule 106(a)(5) Defendant.**

**Civ. A. No. 88–B–1560.**

United States District Court,
D. Colorado.

Oct. 19, 1993.

John R. Paddock, Jr., Jerry N. Jones, Moye, Giles, O'Keefe, Vermeire & Gorrell, Denver, CO, for plaintiff.

John M. Cogswell, Durant D. Davidson, Cogswell and Davidson, Denver, CO, for defendant Clark.

Michael Bahr, Littleton, CO, Scott McComas, Boulder, CO, for defendants Teem, Winters, Bahr, Strain & Price.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Jonathan F. Clark (Clark) moves alternatively for full or partial summary judgment on the amended order citing him to show cause under C.R.C.P. · 106(a)(5) why he should not be bound by the judgment entered against defendants. The Resolution Trust Corporation (RTC), as conservator for First Federal Savings Bank of East Alton, Illinois (First Federal) filed a cross motion for summary judgment. These motions are now adequately briefed and argument was heard on October 12, 1993. Jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated below, I will grant Clark's motion for summary judgment in part, deny it in part, and grant in part and deny in part RTC's cross motion.

### I.

On September 28, 1988, RTC's predecessor plaintiff, First Federal, filed its complaint against Teem and the other Teem partners

for breaches of a promissory note (the note), a note modification agreement (the modified note) (collectively the notes), and contracts of guaranty (the guarantees). On October 30, 1990, RTC moved for summary judgment on these claims. By order dated March 7, 1991, I granted RTC's motion and found Teem and the other Teem partners jointly and severally liable to RTC for $665,213.06, plus costs of $627.90, prejudgment interest of $6,752.24, postjudgment interest of $41,190.04 and directed entry of a final judgment.

On April 22, 1991, RTC timely moved for attorneys' fees and costs against Teem and the other Teem partners. By order dated August 9, 1991, I granted RTC's motion and found Teem and the other Teem partners jointly and severally liable to RTC for $38,-000.00 in prejudgment attorneys' fees and costs, plus prejudgment interest. This order, incorporated into the second amended judgment on August 9, 1991, did not address RTC's request for post-judgment attorneys' fees and costs. Also on August 9, 1991 RTC filed its notice of satisfaction of judgment to the extent of its $192,085.00 foreclosure bid for the property securing the debt.

On May 10, 1991, RTC also moved for summary judgment on its first C.R.C.P. 106(a)(5) motion asserting that Clark was jointly and severally liable for the judgment entered against Teem and the other partners. I denied RTC's motion and found in favor of Clark. RTC appealed this ruling and the Tenth Circuit reversed my decision. *RTC v. Teem Partnership,* 977 F.2d 596, Unpublished Disposition, 1992 WL 279811 (10th Cir. Sept. 30, 1992). This case is now before me on remand.

On November 27, 1992, approximately one month after the Tenth Circuit remanded this case, RTC filed an amended C.R.C.P. 106(a)(5) motion for issuance of citation to show cause as to Jonathan F. Clark. On December 3, 1992, I issued an order that Clark show cause why he should not be bound by the judgment entered earlier. On December 10, 1992, Clark responded. Rule 106(a)(5) allows a judgment creditor to request an order citing a general partner not served originally with a summons and who did not appear in the action to show cause

why he should not be bound by the judgment against the partnership in the same manner as though he had been originally served with the summons. This matter is now before me on cross motions for summary judgment.

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Here, both parties move for summary judgment and neither party contends that there are material issues of fact precluding a judgment as a matter of law. Furthermore, neither party responds to the other's summary judgment motion with specific facts demonstrating a genuine issue for trial. I agree that there are no genuine disputes of material fact and that summary judgment is now appropriate.

## II.

The following facts are undisputed. Teem is a Colorado general partnership in the business of developing and managing commercial real estate. Defendants Winter, Bahr, Strain and Price were Teem's original general partners. On July 15, 1985, Teem executed the note for $387,200.00 plus interest payable to Cambridge Financial Corporation (Cambridge), secured by a deed of trust on real property in Douglas County, Colorado. Also on July 15, 1985, Teem executed a rent assignment agreement, in which Teem agreed to assign to Cambridge all rents, revenues, and benefits produced by the property securing the note under the deed of trust should Teem default. As further security, the Teem partners entered into the guarantees. On July 30, 1985, Cambridge assigned its interest in the note, the deed of trust, the rent assignment, and the guarantees to First Federal.

When the note was executed on July 15, 1985, Clark was not a Teem general partner. At that time, Clark was part owner and senior vice-president of Cambridge. He was responsible for handling the loan approval process on Teem's loan and for selling this loan to First Federal. Clark became a Teem general partner on October 11, 1985. From

1986 to 1987, Clark represented in his federal income tax returns that he was a Teem general partner and he took 100% of the personal income tax deductions attributable to Teem's losses.

On July 10, 1986, Clark wrote a letter to First Federal indicating that Teem wanted to increase its loan. Teem and First Federal executed the modified note for $460,000.00 on July 30, 1986 in which the note's terms were "ratified, republished and reaffirmed". No monthly payments were made to First Federal on the notes after February, 1988. On May 1, 1988, in consideration for Teem allowing First Federal to implement the rent assignment, First Federal agreed not to file suit on the notes (the forbearance agreement).

In September of 1988 when this action was filed RTC's predecessor plaintiff, First Federal was unaware of Clark's partnership interest. The Federal Home Loan Bank Board later determined that First Federal was insolvent and that grounds existed to appoint FSLIC as First Federal's conservator. On August 9, 1989, under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), the RTC succeeded FSLIC as conservator in this action. In January of 1991, during discovery in the underlying action, Clark's partnership interest was revealed for the first time to the RTC.

## III.

Clark moves for summary judgment on the grounds that § 13–50–105, C.R.S. and § 4–3–606, C.R.S. bar the RTC's attempt to impose personal liability on him. Relying on § 7–60–117, C.R.S., Clark alternatively moves for partial summary judgment asserting that at most, he is liable only for the increased loan amount under the note modification agreement, plus any additional interest attributable to that increase. Clark also asserts certain other defenses against the RTC.

## A.

■ Clark first contends that his separate property is not subject to the judgment against Teem because he was not served as a individual party *before* the judgment entered.

To reach this conclusion, he argues that Rule 106(a)(5) is inconsistent with § 13–50–105, C.R.S. and, thus, invalid. I disagree. Although promulgated as a procedural rule by the Colorado Supreme Court, I construe Rule 106(a)(5) according to ordinary rules of statutory construction. *Watson v. Fenney,* 800 P.2d 1373 (Colo.App.1990) (rules of statutory construction also apply to the interpretation of procedural rules).

To create conflict, Clark reads into § 13–50–105 a time limitation for obtaining jurisdiction over an individual partner before separate property may be bound by a judgment against the partnership. Section 13–50–105 provides in relevant part:

A partnership ... may be sued in an action in its common name to enforce ... against it a substantive right; except that in such action only ... the property of the partnership ... and the separate property of any individual member thereof who is named as a party individually and over whom individually the court has acquired jurisdiction either by entry of appearance or service of process may be bound by the judgment herein.

■ I look to legislative intent when construing a statute silent as to a particular issue. *Watters v. Pelican Intern., Inc.,* 706 F.Supp. 1452 (D.Colo.1989). The primary indicia of legislative intent is the plain and ordinary meaning of the language employed. *Id.* Section 13–50–105 states no time limitation for acquiring jurisdiction over a partner. I see no reason to stray from this statute's plain meaning by imposing a time limitation absent evidence of contrary legislative intent. I conclude that § 13–50–105 does not require that Clark be served before the Teem judgment entered in order to find him personally liable for this judgment.

Colorado Rule of Civil Procedure 106(a)(5) reads:

When judgment is recovered against one or more of several persons jointly indebted upon an obligation, and it is desired to proceed against ... persons not originally served with the summons who did not appear in the action, [s]uch persons may be cited to show cause why they should not be

bound by the judgment in the same manner as though they had been originally served with the summons, and in his answer ... may set up any defense either to the original obligation or which may have arisen subsequent to judgment, except ... the statute of limitations.

■ When two statutes concern the same subject matter, I must read them together and reconcile them, if possible, so as to give effect to each. *M.S. v. People*, 812 P.2d 632, 637 (Colo.1991). When read in light of Colorado's Uniform Partnership Law, §§ 7–60–101 *et seq.*, 3A C.R.S. (1986), § 13–50–105 and Rule 106(a)(5) concern the same subject matter—an individual partner's liability for a partnership obligation.

Section 13–50–105 and Rule 106(a)(5) provide that a partner's separate property may be bound by a judgment against his partnership after the court acquires jurisdiction over him by personal service. Two means are provided to enforce a partnership liability against an individual partner's separate property. Section 13–50–105 applies when a partner is named and served as a defendant before judgment enters while Rule 106(a)(5) applies the process after judgment enters. Section 13–50–105 generally concerns actions against partnerships and individual partners but does not address post-judgment proceedings. Rule 106(a)(5) compliments § 13–50–105 by providing the procedure for subjecting an unnamed partner to the court's jurisdiction after judgment enters against his partnership. Since Rule 106(a)(5) and § 13–50–105 can be construed harmoniously, Rule 106(a)(5) is not infirm. Accordingly, RTC can press this post-judgment proceeding against Clark under Rule 106(a)(5) to bind his separate property for the Teem judgment.

### B.

Clark next contends that RTC's claim is barred by Uniform Commercial Code § 4–3–606(1)(a), C.R.S. which provides in relevant part:

1) The holder discharges any party to the instrument to the extent that without such party's consent the holder:

a) Without express reservation of rights releases or agrees not to sue any person against whom the party has, to the knowledge of the holder, a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person; ...

■ Specifically, Clark argues that RTC's predecessor plaintiff, First Federal, discharged him from liability on the notes by agreeing without his consent not to sue Teem under the forbearance agreement. Clark's reliance on § 4–3–606(1)(a) is unavailing because it is based on a purported oral agreement which is unenforceable against the RTC under the doctrine of *D'Oench, Duhme & Co. v. F.D.I.C.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and 12 U.S.C. § 1823(e). In addition, Clark attempts to invoke § 4–3–606(1)(a) by asserting that he is a surety, when he is not. Moreover, even if Clark were a surety, § 4–3–606(1)(a) applies only to known sureties. Neither First Federal nor the RTC knew of Clark's partnership status until January 1991, long after the execution of the forbearance agreement. Therefore, as a matter of law, Clark's defense based on § 4–3–606(1)(a) cannot be sustained against the RTC.

Unwritten agreements tending to defeat or diminish the RTC's rights under an instrument are unenforceable against the RTC. 12 U.S.C. § 1823(e); *D'Oench, Duhme & Co.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *See generally Resolution Trust Corp. v. Wellington Dev. Group*, 761 F.Supp. 731 (D.Colo.1991) (discussing the genesis of and interrelationship between *D'Oench, Duhme* and § 1823(e)). Even written agreements which defeat or diminish the RTC's rights are unenforceable unless they also comply with the additional § 1823(e) requirements. 12 U.S.C. § 1823(e).

In my March 7, 1991 order, I found that the forbearance agreement was not in writing and was not approved by First Federal's board of directors as required by 12 U.S.C. § 1823(e)(3). Clark does not now dispute these facts. Clark's defense against the RTC based on the forbearance agreement is

clearly barred under *D'Oench, Duhme* and § 1823.

■ Relying on *Moss v. McDonald,* 772 P.2d 626 (Colo.App.1988), Clark further asserts that he is a surety and, thus, he can invoke § 4–3–606(1)(a) as a defense. I disagree. Suretyship is "... where one person has undertaken an obligation and another person is also under an obligation ... to the obligee, who is entitled to ... one performance, and as between the two ... one rather than the other should perform." Restatement of Security § 82. The law protects sureties against agreements increasing their liability because, unlike co-makers, sureties do not benefit directly from the loan. *See generally* J. White & R. Summers, *Uniform Commercial Code* § 13–13, at 655–56 and § 13–15, at 662 (3d ed. 1988). With respect to agreements not to sue, courts reason that such agreements unfairly increase the risk a surety agreed to assume. *Id.* at § 13–15, at 662; *See also U.S. v. Unum,* 658 F.2d 300, 304–5 (5th Cir.1981).

Although *Moss* is consistent with these general rules, Clark was not a surety. As a Teem general partner, Clark's liability is joint and several and, thus, the RTC need not look to Teem or the other Teem partners for payment before turning to Clark. Section 7–60–115, 3A C.R.S. (1986). Furthermore, unlike a surety, Clark benefitted directly from the loans by taking personal income tax deductions attributable to Teem's losses.

■ Moreover, § 4–3–606(1)(a) applies only to known sureties. Official Comment 3 to § 4–3–606 states that the words "to the knowledge of the holder" excludes the latent surety. Here, First Federal was unaware that Clark was a Teem general partner when the forbearance agreement was executed. Therefore, even if 12 U.S.C. 1823(e) permits Clark to raise a defense based on the forbearance agreement, and even if Clark is a surety, he was not released from liability under § 4–3–606(1)(a) because he is at best a latent surety.

## C.

■ Clark next argues that § 7–60–117, 3A C.R.S. (1986) absolutely bars his personal liability for the judgment on the note because the note's obligation arose before his admission into the partnership. He argues that at most, he can be personally liable only for the increase in the loan amount under the modified note which was executed after he became a Teem partner ($72,800.00 plus interest). Section § 7–60–117, C.R.S. provides that an incoming partner is liable for the partnership obligations arising before his admission only to the extent of the partnership property.

■ Clark contends that he can be held personally liable on the note only if the modified note is a novation rather than a reaffirmation of a pre-existing obligation's continued existence. A novation requires that the pre-existing obligation be extinguished and anything remaining of the original obligation prevents a novation. *Moffat County State Bank v. Told,* 800 P.2d 1320, 1323 (Colo.1990). A mere modification of a pre-existing obligation is not a novation. *Id.*

The RTC concedes that there has been no novation. I agree that, as a matter of law, the prior note was not extinguished. The only new obligation created by the modified note is the additional principal of $72,800.00 plus interest. Absent a novation, the modified note fails to support the RTC's contention that Clark is personally liable for the full amount of the note.

RTC argues, however, that Clark is personally liable for the note's full amount, notwithstanding its execution before Clark became a Teem partner because the modified note "ratified, republished and reaffirmed" the note's terms and provisions. The RTC relies on *Kaneco Oil & Gas, Ltd., II v. University Nat. Bank,* 732 P.2d 247 (Colo. App.1986) and *Ball v. Carlson,* 641 P.2d 303 (Colo.App.1981). However, neither of these cases supports the RTC's proposition that an incoming partner is personally liable for pre-existing partnership obligations when the obligation is ratified, republished and reaffirmed *after* a partner is admitted to the partnership. '

The RTC further contends that § 7–60–117 is inapplicable to Clark because he accepted the note's benefits after becoming a Teem partner. I disagree. Section 7–60–117 does not distinguish between those instances in which an incoming partner accepts the benefits of pre-existing partnership obligations and those in which he disclaims such benefits.

The Official Comment to the Uniform Partnership Act § 17 recognizes that an incoming partner receives the benefits of the partnership property and an established business. Yet despite this acknowledgement, § 7–60–117 expressly limits an incoming partner's liability for obligations of the partnership arising *before* admission to partnership property. I will not legislate an exception for "benefiting partners" which the legislature did not intend. 73 Am.Jur.2d *Statutes,* § 314 (1974).

At oral argument, RTC argued that equity supports holding Clark personally liable for the note's full amount. This argument lack merit because First Federal could have taken simple precautionary measures to avoid the effect of § 7–60–117, but did not. Specifically, First Federal, as a condition of the note, could have required Teem to notify First Federal of any change in Teem's partnership status. Moreover, it could have required new Teem partners to execute personal guarantees. Where, as here, First Federal was in a position to demand full disclosure and personal guarantees from incoming Teem partners, equity fails to support imposing personal liability on Clark contrary to § 7–60–117.

I conclude that absent Clark's assumption of the prior obligation, the personal liability imposed on Clark under the modified note is limited to the extent of this new obligation which was created after Clark's partnership interest began. Section 7–60–117, C.R.S.

Although the Colorado courts have not addressed the question whether § 7–60–117 is inapplicable to an incoming partner who assumes a pre-existing obligation, other jurisdictions interpreting parallel statutes have held that UPA § 17 does not apply to an incoming partner who expressly assumes a pre-existing obligation. J. Callison, *Partner-ship Law & Practice* § 14.05, at 14–14 to 14–15 (1992); *See, e.g., Kalichman v. Beverly Holding Co.,* 130 A.D.2d 327, 520 N.Y.S.2d 255 (N.Y.A.D.1987). I believe the Colorado courts would reach the same result.

The dispositive issue here, then, is whether Clark expressly assumed personal liability for the note and, if so, to what extent. As evidence that he did, the RTC submits exhibits 5 through 9. Exhibit 5 is the amended partnership agreement (the Agreement). Exhibits 6 and 7 are letters of offer and acceptance executed before the amended partnership agreement, exhibit 8 is a partnership resolution. Exhibit 9 is a contract of guaranty between Clark and the other Teem partners, consistent with the terms of exhibits 6, 7, and 8, for one-third of the note's amount. Clark does not dispute the existence or substance of these exhibits.

At oral argument, the RTC asserted that Clark assumed liability for the full amount of the Teem debt by executing the Agreement. Specifically, the RTC relies on § 6.06 in the Agreement which provides:

> If the assets and proceeds of the liquidation are insufficient to pay all of the items referred to in paragraphs (a) and (b). . . . the Partners' representatives shall make an assessment against the Partners to cover net losses of the Partnership and such assessment shall be paid and applied to the satisfaction of the items covered in paragraphs (a) and (b).

In further support, the RTC cites *Wisnouse v. Telsey,* 367 F.Supp. 855 (S.D.N.Y. 1973) and *Magrini v. Jackson,* 17 Ill.App.2d 346, 150 N.E.2d 387 (1958). However, these cases are distinguishable.

In *Wisnouse,* the court found the incoming partner liable for a pre-existing obligation under a partnership provision which read:

> The General Partners shall have unlimited liability for the repayment, satisfaction and discharge of all debts, liabilities and obligations of the partnership to the full extent of their respective assets. *Wisnouse v. Telsey,* 367 F.Supp. at 859.

In *Wisnouse,* unlike here, the partners expressly agreed to unlimited liability to the

full extent of their assets. *Id.* Here, Clark agreed to be liable only to the extent of the assessment. More importantly, there is no mention of unlimited liability in the Agreement's provision.

In *Magrini*, the parties, in forming the partnership, agreed to convert an individual debt into a partnership debt. The court held that the partners were all liable individually for this debt, just as though the partnership had contracted the debt in the first instance. *Magrini v. Jackson*, 150 N.E.2d at 391. Here, unlike *Magrini*, the note was not an individual debt before Clark joined the Teem partnership and there was no express agreement among the Teem partners that Clark would assume personal liability to the full extent of the note.

■■■■ Ambiguity of a contract provision is a legal issue. *Northwest Cent. Pipeline Corp. v. JER Partnership*, 943 F.2d 1219, 1226 (10th Cir.1991). As a matter of law, I conclude that the word "assessment" in § 6.06(d) of the Agreement renders the Agreement ambiguous as to the extent of Clark's personal liability. Where ambiguity exists, parol evidence is admissible to prove intent of the parties. *Sequa Corp. v. Lititech, Inc.*, 780 F.Supp. 1349 (D.Colo.1992).

To determine the extent of Clark's personal liability under provision 6.06(d), I turn to exhibits 6–8. Read together, these documents clearly show that Clark agreed to be personally liable for one-third of the amount of the note in exchange for admission to the partnership and entitlement to all of Teem's income tax deductions. Therefore, as a matter of law, I hold that § 7–60–117 is inapplicable to the extent that Clark agreed to assume personal liability for one-third of the note's obligation.

### D.

I turn now to Clark's remaining contentions that Rule 106(a)(5) is unconstitutional as applied here and that RTC's claim is barred by the doctrines of waiver, estoppel and collateral estoppel.

### 1.

■■■ Clark contends that Rule 106(a)(5), as applied, violates his due process guarantees under the Colorado and United States Constitutions. I disagree. Clark's argument lacks merit in light of *Federal Deposit Ins. Corp. v. Wells Plaza Ltd. Partnership*, 826 P.2d 427 (Colo.App.1992) and the Tenth Circuit's prior decision in this case. In this case the Tenth Circuit has noted that Clark's fairness concerns are obviated by the opportunity to respond to the show cause order. *Resolution Trust Corp. v. Teem Partnership*, 977 F.2d 596, Unpublished Disposition, 1992 WL 279811, at 6. Furthermore, in *Wells*, the Colorado Court of Appeals noted that by permitting an answer to the show cause order, "the issues are made up in much the same way as they would be if the proceedings had been started with a summons and complaint." *Wells Plaza*, 826 P.2d at 429 (quoting R. Hardaway & S. Hyatt, 5 *Colorado Civil Rules Annotated* 512–13 (2d ed. 1985)).

Clark was served with the amended show cause order and he was given a reasonable opportunity to fully respond to the RTC's claims. Clark pled and was heard fully on the numerous defenses addressed in this opinion. Clark has had a full and fair opportunity to respond to the RTC's claim and to present his defenses to the original obligation. *See generally Resolution Trust Corp. v. Teem Partnership, Id.* Therefore, Rule 106(a)(5) as applied here to Clark comports with due process.

### 2.

Clark also argues that the RTC's attempt to impose personal liability against him under Rule 106(a)(5) is barred by the doctrines of waiver, estoppel and collateral estoppel. Again, I disagree. Clark seeks to nullify the Tenth Circuit's prior decision in this case without a legal or factual basis.

■■■■ Waiver, estoppel and collateral estoppel are common law judicial doctrines. As such, a court can establish exceptions to their application. Rule 106(a)(5), as adopted by the Colorado Supreme Court, is such an exception. Moreover, Clark's argument could effectively void Rule 106(a)(5) proceedings because such proceedings are inevitably susceptible to claims of waiver, estoppel and collateral estoppel. The Colorado Supreme

Court would never intend such an absurd result. Therefore, Clark's waiver, estoppel and collateral estoppel defenses are ineffective against the RTC in this Rule 106(a)(5) proceeding.

### E.

In summary, I hold that Clark is jointly and severally liable to the RTC for the full amount of the note's increase under the modification agreement ($72,800.00), plus any increased interest accruing on that amount, and one-third of the note ($129,067.00) plus interest attributable to that amount as a result of Clark's assumption of that liability in the Agreement.

### IV.

█ The RTC also seeks to hold Clark personally liable for its attorneys' fees and costs incurred in bringing this Rule 106(a)(5) proceeding. In pertinent part, Rule 106(a)(5) provides that "such persons may be cited to show cause why they should not be bound *by the judgment* . . .". (emphasis added). The RTC fails to cite any authority justifying expansion of this Rule. The plain language of the Rule limits RTC's relief to the original judgment which, in this case, does not include post-judgment attorneys' fees and costs. However, under Rule 106(a)(5), Clark is liable for $38,000.00 in prejudgment attorneys' fees and costs which was included in the original judgment.

Accordingly, IT IS ORDERED THAT:

1) Clark's summary judgment motions are GRANTED in part and DENIED in part; and,

2) The RTC's summary judgment motion is GRANTED to the extent that Clark is jointly and severally liable upon the Teem judgment for $38,000.00 in prejudgment attorneys' fees and costs, for one-third of the note in the amount of $129,067.00, plus attributable interest on that amount, and for the note's increase under the modification agreement in the amount of $72,800.00, plus interest accruing on that amount; and,

3) The parties shall meet within 10 days from the date of this order to prepare a stipulated form of judgment to enter in accordance with the views expressed in this opinion and order and if the parties are unable to so agree, they shall submit on or before November 15, 1993 proposed judgments and memoranda in support thereof.