In re KECK, MAHIN & CATE, Debtor.

Keck, Mahin & Cate, et al., Plaintiffs,

v.

Barbara P. Billauer, et al., Defendants.

Bankruptcy No. 97 B 38580.
Adversary No. 99 A 01635.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 6, 2002.

Stephen C. Schulte, Winston & Strawn, Chicago, IL, for Plaintiffs.

Thomas E. Ho'okano, San Francisco, CA, Barbara P. Billauer, Lido Beach, New York, for Defendants.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW*

CAROL A. DOYLE, Bankruptcy Judge.

This matter is before the court on plaintiff Jacob Brandzel's ("plaintiff") adversary complaint seeking a determination of defendants' liability under the Illinois Uniform Partnership Act ("IUPA"), 805 ILCS 205/1 *et seq.* (West 1993). The plaintiff is the plan administrator for the debtor Keck, Mahin & Cate ("Keck") pursuant to the chapter 11 plan ("Plan") confirmed by the bankruptcy court on December 16, 1999.[1] The plaintiff seeks recovery for malpractice claims filed by Bank of Orange County and Pacific Inland Bancorp (collectively, "Pacific Inland") and Wozniak Industries, Inc. ("Wozniak"), a claim filed by Citizens Commercial Leasing Corporation ("Citizens") and administrative claims allowed in the bankruptcy case as of December 16, 1999. Defendants Barbara P. Billauer and Thomas E. Ho'okano (collectively, "defendants") are former capital partners of Keck. Pursuant to the Plan, the plaintiff is the assignee of all allowed claims, and has the right to seek recovery from partners who did not participate in a settlement of partners' outstanding liabilities. Ms. Billauer and Mr. Ho'okano dispute any liability for allowed claims against Keck. For the reasons stated below, the court finds for the plaintiff regarding the Pacific Inland, Wozniak and administrative claims. The court finds for the defendants regarding the Citizens claim.

After holding a trial on the merits, the court makes the following findings of fact and conclusions of law:

1. Although Keck, Mahin & Cate is also a named plaintiff, Mr. Brandzel was the primary party prosecuting this adversary proceeding pursuant to the provisions of the Plan.

## A. BACKGROUND

Keck was an Illinois partnership whose partners engaged in the practice of law. On December 16, 1997, some of Keck's creditors filed an involuntary chapter 7 bankruptcy petition against the partnership. On December 31, 1997, the bankruptcy court granted Keck's motion to convert the case to chapter 11 of the Bankruptcy Code. The Plan was confirmed on December 16, 1999. Under the confirmation order ("Order"), Jacob Brandzel was appointed plan administrator.

Ms. Billauer and Mr. Ho'okano are former capital partners of Keck. Ms. Billauer was a partner from July 2, 1990 until August 31, 1993.[2] Mr. Ho'okano was a partner from June 24, 1991 until March 26, 1993. Pursuant to the Plan, all Keck partners had the option to pay a specified settlement amount for partnership liabilities and become "participating partners," or to decline to pay the settlement amount and become "non-participating partners." Non-participating partners potentially faced maximum liability for Keck's obligations. Ms. Billauer and Mr. Ho'okano chose not to participate in the settlement and are being sued for their liability with regard to the Pacific Inland, Wozniak, Citizens and administrative claims, totaling $5,483,189.96.

## B. ADMINISTRATIVE CLAIMS

The plaintiff seeks to hold the defendants liable for administrative claims allowed in the bankruptcy case as of

December 16, 1999, in the amount of approximately $2.1 million. Under section 9.8 of the Plan and paragraph F of the Order, the plaintiff is entitled to recover allowed administrative claims as of December 16, 1999 from all non-participating partners. Neither Mr. Ho'okano nor Ms. Billauer dispute the validity of the Plan or Order granting the plaintiff the authority to recover administrative claims allowed as of December 16, 1999. See Plan § 9.8; Order ¶ F. They also have not contested the amount of administrative claims as of December 16, 1999. Therefore, the court finds for the plaintiff against both defendants with respect to the $2,177,787.73 in administrative claims allowed as of December 16, 1999.

## C. PACIFIC INLAND, WOZNIAK AND CITIZENS CLAIMS

The plaintiff contends that the defendants are jointly and severally liable under section 13 of the IUPA, 805 ILCS 205/13, and the partnership agreement ("Agreement") for the Pacific Inland, Wozniak and Citizens claims. He asserts that each of these claims arose before or during the time the defendants were partners. Ms. Billauer and Mr. Ho'okano dispute any liability for the Pacific Inland, Wozniak and Citizens claims. Both Ms. Billauer and Mr. Ho'okano argue that: (1) the allowed claims were not in existence when they withdrew from the partnership; (2) Keck paid Citizens the full amount in-

---

**2.** Ms. Billauer initially disputed the date of her termination as a partner. Ms. Billauer stipulated to her status as a capital partner from July 2, 1990 through December 31, 1992. However, she denied being a capital partner from January 1, 1993 through August 31, 1993. The plaintiff's evidence establishes that Ms. Billauer was a capital partner through August 31, 1993. The tax forms Keck submitted on behalf of each partner and

the testimony of Mr. Clarence Redman, the former managing partner of Keck, demonstrate that Ms. Billauer shared in firm profits through August 31, 1993. Ms. Billauer concedes this point in her post-trial brief, in which she states that "any liabilities or potential obligations on her part were erased when her partnership shares were 'bought' back by the firm in August of 1993."

curred while the defendants were partners; (3) the partnership dissolved upon their withdrawal and the new partnership assumed all prior debts, thereby terminating their liabilities; (4) liability is barred under the terms of the Agreement; (5) the statute of limitations bars suit against them; and (6) they are not liable because Keck was solvent when they left the partnership. Ms. Billauer also argues that (7) the Agreement is void as against public policy and (8) the doctrine of laches bars suit against her.[3] Each of these defenses is discussed below.

## 1. *Existence of Wozniak and Pacific Inland Claims*

Ms. Billauer and Mr. Ho'okano first argue that no obligations to Wozniak or Pacific Inland existed at the time they left Keck. They assert that they are liable under paragraph 8(a) of the Agreement only for "Firm Obligations" that arose before they left the partnership.[4] They further contend that the Wozniak and Pacific Inland malpractice claims did not become Firm Obligations until those claimants had a judgment entered against them or the malpractice claims were settled, which the defendants assert occurred after they left the partnership.

This argument is not persuasive. Sections 13 and 15 of the Illinois Uniform Partnership Act, 805 ILCS 205/13 & 15, determine the scope of Ms. Billauer's and Mr. Ho'okano's liability to third parties (which includes the plaintiff in this case). That liability is not limited to "Firm Obli-

gations" as that phrase is used in paragraph 8(a) of the Agreement. Section 13 of the Act provides that "[w]here, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, . . . loss or injury is caused to any person, . . . the partnership is liable therefor to the same extent as the partners so acting or omitting to act." 805 ILCS 205/13. Under the language of section 13, it is the "wrongful act or omission" of a partner that gives rise to the liability of all other partners. The only reasonable interpretation of this provision is that the liability of all partners arises at the time of "any wrongful act or omission" by any partner. *Cf. In re Keck, Mahin & Cate*, 241 B.R. 583, 595 (Bankr. N.D.Ill.1999) (Barliant, J.) ("[I]f a professional's negligent conduct causes an injury, that professional's liability arises from his or her conduct."); *Garcia v. Pinto*, 258 Ill.App.3d 22, 25, 195 Ill.Dec. 795, 629 N.E.2d 103, 105 (1993) ("Generally, a cause of action for legal malpractice arises at the time of the negligent act when the attorney breaches his duty to act skillfully and diligently in representing his client.").

A partner cannot escape liability simply by leaving the partnership after the malpractice is committed but before the client wins or settles a malpractice claim. Courts have consistently held that, within the context of partnership dissolution, withdrawing partners remain liable for matters pending at the time of dissolution. *See, e.g., Thompson v. Gilmore*, 888

---

3. Ms. Billauer raised a number of other defenses in her answer, but she failed to raise them at trial and they are therefore waived.

4. Neither Ms. Billauer nor Mr. Ho'okano contest that they are liable under the Agreement for partnership debts that arose before they joined the firm. Under the IUPA, partner liability for pre-existing partnership debts is generally limited to partnership assets. 805

ILCS 205/17. However, an incoming partner can be held personally liable where there is an express assumption of liability. *Magrini v. Jackson*, 17 Ill.App.2d 346, 356, 150 N.E.2d 387, 392 (1958). In this case, the partnership agreement expressly provides for the assumption of pre-existing Firm Obligations by incoming partners. *See* Agreement ¶ 8(a)(1).

S.W.2d 715, 716 (Mo.Ct.App.1994) (holding that "the dissolution of a partnership does not relieve a partnership member from liability on existing contracts"); *Redman v. Walters*, 88 Cal.App.3d 448, 152 Cal. Rptr. 42, 45 (1979) ("In general a dissolution operates only with respect to future transactions; as to everything past the partnership continues until all pre-existing matters are terminated."). These cases support the conclusion that liability under section 13 of the IUPA arises at the time of the offending conduct.

Mr. Ho'okano and Ms. Billauer rely on case law applying the statute of limitations in malpractice cases to argue that a malpractice claim does not arise until an adverse judgment or settlement is entered against the client. They are correct that courts have held that the statute of limitations generally does not begin to run against a malpractice plaintiff until an adverse judgment or settlement occurs. *See, e.g., Praxair, Inc. v. Hinshaw & Culbertson*, 235 F.3d 1028, 1032 (7th Cir.2000). These decisions apply the "discovery rule," allowing claimants a fair opportunity to realize they have been injured and to file an action. *See, e.g., Garcia*, 258 Ill.App.3d at 25, 629 N.E.2d at 105 (noting that although a cause of action accrues when the lawyer breaches his or her duty to the client, "[t]he discovery rule ... operates to delay the commencement of the relevant statute of limitations until the plaintiff knows or should reasonably know that he has suffered injury and that the injury was wrongfully caused"). They do not address when a claim arises for purposes of liability under the IUPA, and do not conflict with the court's interpretation of section 13 of the IUPA.

In other words, it is the act or omission by the attorney that gives rise to the partners' liability under the IUPA, not the subsequent liquidation of a client's damages. The Wozniak proof of claim states that the conduct giving rise to the malpractice claim occurred in January 1989, the date of closing on the underlying transaction. The Pacific Inland proof of claim states that the actions that constituted malpractice occurred in July 1991. Mr. Clarence Redman, the former managing partner of Keck, gave testimony at trial to this effect regarding both claims, and Mr. Ho'okano and Ms. Billauer have not presented any evidence to dispute this. The court therefore finds that both the Wozniak and Pacific Inland claims arose before Ms. Billauer and Mr. Ho'okano left Keck in 1993, and they are both liable to the plaintiff for the full amount of each of those claims.[5]

### 2. Citizens Claim

The plaintiff also seeks to hold defendants liable for the allowed claim of Citizens. The defendants argue that any amount Keck owed for purchases made while they were partners was paid by Keck before it went into bankruptcy. Keck maintained a revolving loan with Citizens primarily for the lease or purchase of office furniture and equipment. Keck's debt to Citizens peaked at around $3 million in early 1993. Keck made payments of interest and principal periodically as they became due through mid 1997. Keck paid Citizens in excess of $3 million from 1992 through 1997. After both defendants left the firm, Keck incurred significant new

**5.** Mr. Ho'okano's argument that an obligation for the Wozniak claim never arose because the settlement agreement did not include an admission of liability by Keck is also incorrect. Whether or not the settlement agreement acknowledged that Keck committed malpractice, it is the settlement of a claim arising against the partners before Mr. Ho'okano left the partnership and he is liable for it.

debt by buying additional equipment through Citizens as it added new personnel in various offices.

The plaintiff failed to introduce into evidence any records or specific testimony reflecting the dates or amounts of purchases financed by Citizens, the dates or amounts of payments made to Citizens, or whether payments to Citizens reflected interest, principal or both. Mr. Redman gave general estimates of the amount of outstanding debt at various times and the amount of monthly payments. However, the evidence presented was not specific enough for the court to determine how much was owed upon the departure of Ms. Billauer or Mr. Ho'okano, and how much of that amount was paid off with the approximately $3 million in payments made by Keck to Citizens from 1992 through 1997. Therefore, the plaintiff failed to meet his burden of proving that the $1.7 million claim of Citizens arose while Ms. Billauer and Mr. Ho'okano were partners.

### 3. *Dissolution of Partnership*

Ms. Billauer and Mr. Ho'okano argue that they are not liable for the Pacific Inland and Wozniak claims because the partnership dissolved when they withdrew from the firm and a new partnership was formed. They contend that the new partnership assumed any debts from the old partnership, and that therefore no liabilities against them now exist. However, whether the partnership dissolved and a new partnership was formed, *see* 805 ILCS 205/29; *Golden v. McDermott, Will & Emery*, 299 Ill.App.3d 982, 988, 234 Ill.Dec. 241, 702 N.E.2d 581, 586 (1998), or the old partnership continued by virtue of paragraph 15(b) of the Agreement without the

defendants, the result is the same. The general rule under Illinois law is that "dissolution of the partnership does not of itself discharge the existing liability of any partners." 805 ILCS 205/36(1). As noted earlier, that liability can stem from prior contractual obligations, including those that give rise to malpractice claims. *See, e.g., Thompson*, 888 S.W.2d at 716.

In addition, partners cannot release one another from liability to third parties. *See Olin Corp. v. Fisons PLC*, No. Civil A. 93–11166–MLW, 1995 WL 811961, at *11 (D.Mass. Apr.24, 1995). Illinois law requires consent by the third party itself to release the liability of any partner. 805 ILCS 205/36(2). This consent may be express or inferred based on the third party's course of conduct after it learned of the dissolution. *Id*. Without this consent, partners cannot shield themselves from the rights of creditors. There is no evidence that either Wozniak or Pacific Inland consented to releasing Ms. Billauer and Mr. Ho'okano of their liability. Therefore, whether the partnership dissolved or the old partnership continued without the defendants, they are liable for debts incurred to the third-party claimants before their departure dates.[6]

### 4. *Five Year Limitation on Liability in Partnership Agreement*

Ms. Billauer and Mr. Ho'okano also argue that they can be pursued for partnership liabilities only during the first five years after they withdrew from the partnership. The defendants rely on paragraph 8(b)(2) of the Agreement, which attempts to reduce a partner's liability by twenty percent per year following a partner's departure from the firm. However,

---

6. In her post-trial brief, Ms. Billauer relies on the Revised Uniform Partnership Act to support her argument that the new partnership automatically assumed all liabilities upon dissolution. However, Illinois has not adopted the Revised Uniform Partnership Act. Instead, the IUPA, based on the Uniform Partnership Act, is controlling. *See* 805 ILCS 205/1.

this provision does not absolve the defendants of liability under the Plan and Illinois law.

The Plan grants the plaintiff the authority to pursue the defendants for the full amount of the allowed claims at issue in this case. Section 9.8 of the Plan specifically states that "[i]n any legal action or proceeding of any kind against a Non Participating Partner, the Plan Administrator shall have any and all rights available under applicable law to assert, and seek recovery for, ... any amount up to the full amount of the Allowed Claims." Section 16.8 states that "[e]xcept as otherwise expressly provided [in the Plan], to the extent the Plan is inconsistent with any other documents, the provisions of the Plan shall be controlling." Therefore, the Plan grants the plaintiff the right to seek recovery for the full amount allowable under Illinois law, and the Plan controls over the terms of the partnership agreement to the extent there are any inconsistencies.

Under Illinois law and the Agreement, Ms. Billauer and Mr. Ho'okano are liable for claims arising before or during the time they were partners. *See* 805 ILCS 205/13 (establishing the liability of co-partners for the acts or omissions of a partner); Agreement ¶ 8(a)(1) (providing for the assumption of pre-existing Firm Obligations by incoming partners); *Magrini,* 17 Ill.App.2d at 356, 150 N.E.2d at 392 (holding that an incoming partner can be held personally liable for pre-existing partnership debts where there is an express assumption of liability). Keck is a general partnership subject to Illinois law. *See* Agreement ¶ 15(j); *see also* Plan § 16.11. Under Illinois law, partners are jointly and severally liable to creditors of the partnership. 205 ILCS 210/13 & 15 (West 1993); *Keck, Mahin & Cate,* 241 B.R. 583, 594. Illinois law does not limit this liability with respect to innocent co-partners. 205 ILCS

210/13 & 15; *In re Georgou,* 145 B.R. 36, 37 (Bankr.N.D.Ill.1992) (Barliant, J.). As noted above, partners cannot release their liability to third parties without their consent. There is no evidence of any such consent, so paragraph 8(b)(2) of the Agreement is not binding on claimants like Wozniak and Pacific Inland. Because the plaintiff stands in the shoes of these two creditors, the defendants cannot escape liability based on paragraph 8(b)(2) of the Agreement.

### 5. *Statute of Limitations*

Ms. Billauer and Mr. Ho'okano also argue that the statute of limitations bars suit against them. They contend that the Wozniak claim, which arose in 1989 and was settled in 1999, was barred under the Illinois statute of limitations for malpractice claims. *See* 735 ILCS 5/13–214.3 (West 1992). Mr. Ho'okano also contends that the Pacific Inland claim, which arose in 1991 and was settled in 2000, was barred under the California and Illinois statutes of limitations. *See* Cal.Civ.Proc. Code § 340.6 (West 1982); 735 ILCS 5/13–214.3. Under Illinois law, the statute of limitations for malpractice is two years from the date of discovery or a maximum of six years from the date the alleged malpractice occurred. 735 ILCS 5/13–214.3. Under California law, the statute of limitations is one year from the date of discovery or a maximum of four years from the date of the wrongful act or omission. Cal.Civ.Proc.Code § 340.6.

However, the defendants may not now raise substantive defenses to the underlying malpractice claims. The defendants are in effect attacking the validity of the claims allowed by the court in the underlying bankruptcy case. If the defendants thought this was a viable defense to the claims, they should have raised it when the debtor presented motions to approve the

settlements of the Wozniak and Pacific Inland claims. The court in the bankruptcy case approved those settlements, and defenses to the underlying malpractice actions can no longer be asserted.

 In addition, the court notes that the relevant statutes of limitations would not have barred either claim. Regarding the Wozniak claim, Keck and Wozniak entered into a statute of limitations tolling agreement in 1993. At that time, the statute of limitations had not run. Therefore, the agreement tolled the period in which Wozniak could bring a malpractice claim. *See, e.g., Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 875 (7th Cir.1997) (noting the enforceability of tolling agreements). Illinois law clearly allows the partners to bind one another on behalf of the partnership. 805 ILCS 205/9 (West 1993). The defendants are not relieved from liability simply because they did not expressly consent to the tolling or settlement agreements.

 Regarding the Pacific Inland claim, neither the California nor the Illinois statute of limitations would bar this claim. California law generally requires that a party commence a cause of action within one year of the date of discovery or within four years of the wrongful act. Cal. Civ.Proc.Code § 340.6(a). However, those time limits are tolled when the offending "attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." *Id.* § 340.6(a)(2); *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort*, 91 Cal.App.4th 875, 110 Cal.Rptr.2d 877, 887–88 (2001). In this case, Keck continued to represent Pacific Inland in litigation stemming from Keck's malpractice until September 1993. Pacific Inland filed suit against Keck in February 1994. Therefore, Pacific Inland complied with California's statute of limitations.

 Pacific Inland's lawsuit against Keck also falls within the time period mandated by Illinois law. As previously stated, a cause of action typically does not accrue for purposes of the statute of limitations until an adverse judgment is entered against the malpractice plaintiff. *See, e.g., Praxair, Inc.*, 235 F.3d at 1032. In this case, Keck's wrongful acts or omissions occurred in 1991. However, judgment was not entered against until at least June 1993. Only then did the Illinois statute of limitations begin to run. Because Pacific Inland filed suit against Keck in February 1994, Illinois' statutory requirements were also satisfied. Therefore, even if the defendants could raise a statute of limitations defense in this proceeding, it has no merit.

### 6. *Solvency of Partnership*

 Both defendants argue that they should not be held liable for any partnership debts because the firm was solvent when they left in 1993. However, neither party cites any support for this argument. The solvency of a partnership at the time a claim arises is not a defense to an action under section 13 of the IUPA.

### 7. *Public Policy*

Ms. Billauer asserts that the Agreement is void as against public policy. She contends that an amendment to the Agreement passed on May 3, 1996 reflects an intent by the partners in 1996 to fraudulently shield themselves from joint and several liability. The amendment in question, paragraph 15(r), attempts to limit a third party's recovery for liabilities arising after May 1, 1996 to general partnership assets. *See* Amendments to Agreement ¶ 15(r) (May 3, 1996) ("Notwithstanding anything to the contrary herein set forth, any ... payment or other obligation pro-

vided for under this [Partnership] Agreement in connection with events that occur or liabilities that arise on or after May 1, 1996 shall be limited to the general partnership assets of the Firm and none of the Partners shall have any personal liability therefor.").

This argument fails for two reasons. First, the amendment would only limit liabilities arising after May 1, 1996. Therefore, it would have no effect on the liability of partners with regard to the Wozniak and Pacific Inland claims, both of which arose prior to the defendants' departures in 1993. Second, even if the partners intended to limit their personal liability with regard to those claims, the amendment is unenforceable under the IUPA. *See* 805 ILCS 205/13 & 15; *see also Olin Corp. v. Fisons PLC*, 1995 WL 811961, at *11.[7]

### 8. *Laches*

 Ms. Billauer argues that the plaintiff is barred from recovery under the doctrine of laches. Laches is an equitable defense that is properly invoked when "unreasonable delay in pressing one's rights ... prejudices the defendant." *Cook v. City of Chicago*, 192 F.3d 693, 695 (7th Cir.1999). Although she does not clearly state the basis for this defense, Ms. Billauer seems to contend that the plaintiff did not pursue or notify Ms. Billauer of his intent to pursue claims against her until after she had committed any available assets toward pursuing a doctoral degree.

However, Ms. Billauer failed to prove that the plaintiff delayed pursuit of his claims, or that the delay was unreasonable.

The bankruptcy court did not confirm Keck's chapter 11 plan until December 16, 1999. Therefore, the plaintiff was not granted authority to pursue any claims until December 16. *See* Order ¶ F ("Any action by the Plan Administrator may be commenced within one year from the later of date of the appointment of the Plan Administrator or date of entry of this Confirmation Order."). The plaintiff filed his original adversary complaint on December 28, 1999, less than two weeks after the court confirmed Keck's Plan. In addition, Ms. Billauer had notice through the plan confirmation process of her potential liability long before this adversary was filed. She has failed to prove the defense of laches.

### D. *CONCLUSION*

For the foregoing reasons, the court finds that Mr. Ho'okano and Ms. Billauer are jointly and severally liable to the plaintiff in the amount of $775,000.00 for the Wozniak claim, $825,000.00 for the Pacific Inland claim and $2,177,787.73 for the administrative claims. The court finds for the defendants regarding the Citizens claim.[8]

---

7. Ms. Billauer also suggests that, after her departure, the partners fraudulently concealed the existence of the Wozniak and Pacific Inland claims and thereby breached their fiduciary duties to the defendants. She cites no authority for these arguments, and they do not provide a defense to the third-party claims the plaintiff is pursuing in this case.

8. Ms. Billauer included two counterclaims with her answer to the complaint, alleging intentional infliction of emotional distress and negligent infliction of emotional distress. However, she failed to pursue them at trial. Her counterclaims are therefore dismissed.